No.   94-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

VIOLET SYNEK,

      Claimant and Appellant,

  v.

STATE COMPENSATION MUTUAL
INSURANCE FUND,

      Insurer and Respondent.

FILED

JUL 25 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court, State of Montana
               The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Terry Spear, Attorney at Law, Billings, Montana

      For Respondent:

        Susan C. Witte, Legal Counsel, State Compensation
        Insurance Fund, Helena, Montana

Submitted on Briefs:  March 9, 1995

Decided:  July 25, 1995

Filed:

                          Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Violet Synek (Synek) appeals from an order of the Workers' Compensation Court affirming the decision of the Montana Department of Labor and Industry (Department) which denied her claim for payment for past and continuing chiropractic treatments, penalty and attorney's fees. We affirm.

We restate the issues on appeal as follows:

1. Did the Workers' Compensation Court err in affirming the Department's determination that Synek's chiropractic treatments were not compensable?

2. Were Synek's procedural due process rights violated by the Department's procedures?

In the course of Synek's employment with the Professional Nursing Personnel Pool, she suffered two accidents in 1980. In October 1980, she sustained cervical, lumbar and knee injuries. A few months later, she injured her upper back, left shoulder, arm and wrist. The State Compensation Insurance Fund (State Fund) is Professional Nursing Personnel Pool's workers' compensation insurer.

Synek sought treatment for her injuries from Dr. J.L. Cromwell (Cromwell), a chiropractor. In 1984, Cromwell sold his practice to Dr. Karlene Berish (Berish), who continued treating Synek. The State Fund paid for Synek's chiropractic treatments.

In correspondence with the State Fund regarding Synek's condition in 1987, Berish stated that she was treating Synek on a "patient need basis . . . for relief of pain associated with flare-ups due to a very unstable lower back." She further indicated that

2

Synek's condition "continues to deteriorate" and that she was providing Synek with "palliative care . . . so that [Synek] may function more comfortably on a day to day basis."

In November 1988, the State Fund informed Berish that it would no longer pay for Synek's chiropractic treatments. The State Fund's decision was based on the report of Dr. Phil Blom, who, after reviewing Synek's file, opined that the treatments she was receiving were not compensable.

Synek filed a petition with the Department for the cost of unpaid treatments and for a determination with regard to the compensability of future treatments. The Department's hearing examiner denied Synek's claim, concluding that the State Fund was not liable for payment of past or, in the absence of specific authorization, future chiropractic treatments by Berish. Synek sought judicial review of the Department's decision in the Workers' Compensation Court and the court affirmed that decision. Synek appeals.

1. Did the Workers' Compensation Court err in affirming the Department's determination that Synek's chiropractic treatments were not compensable?

It is well-settled that "[w]orkers' compensation benefits are determined by the statutes in effect as of the date of injury." Buckman v. Mont. Deaconess Hospital (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Thus, the 1979 version of the Workers' Compensation Act applies to Synek's claim arising from injuries sustained in 1980.

3

Section 39-71-704, MCA (1979), provides, in pertinent part:

> **Payment of medical, hospital, and related** services.
> In addition to the compensation provided by this chapter
> and as an additional benefit separate and apart from
> compensation, the following shall be furnished:
> (1) After the happening of the injury, the employer or
> insurer shall furnish, without limitation as to length of
> time or dollar amount, reasonable services by a physician
> or surgeon, reasonable hospital services and medicines
> when needed, and such other treatment **as** may be approved
> by the division for the injuries sustained.

Administrative rules regarding chiropractic services were duly promulgated to implement the "other treatment as may be approved" portion of § 39-71-704(1), MCA (1979). Those rules, and the evidence regarding the nature of Synek's chiropractic treatments vis-a-vis those rules, form the crux of this case.

Section 24.29.2003, ARM, sets forth the type of chiropractic treatments which are compensable:

> Workers' Compensation Does Pay (1) For
> "therapeutics" defined as: any treatment considered
> necessary to return the patient to a preclinical status
> or establish a stationary status.
> (2) Rehabilitation procedures necessary for reeducation
> or functional restoration of a disabled body system or
> part.

Section 24.29.2004, ARM, sets forth the chiropractic treatments which are not compensable:

> Workers' Comwensation Does Not Pay (1) **For**
> maintenance -- a regime designed to provide the optimum
> state of health while minimizing recurrence of the
> clinical status.
> (2) Prevent treatment -- procedures necessary to prevent
> the development of clinical status.

Via extensive findings based on the testimony and evidence of record, the Department's hearing examiner determined that Synek's treatments were "maintenance" rather than "therapeutics" under

4

§§ 24.29.2003 and 24.29.2004, ARM. On that basis, the hearing examiner concluded that the treatments were not compensable.

On petition for judicial review to the Workers' Compensation Court, Synek argued that the hearing examiner's decision was not supported by substantial evidence. The court concluded that substantial evidence supported the decision and affirmed the determination that Synek's treatments were not compensable.

In reviewing an agency's decision in a contested case procedure under the Montana Administrative Procedure Act, reviewing courts apply the standards of review contained in § 2-4-704, MCA; State Comp. Mut. v. Lee Rost Logging (1992), 252 Mont. 97, 102, 827 P.2d 85, 88. Section 2-4-704(2)(a)(v), MCA, provides that the agency's decision may be reversed if substantial rights have been prejudiced because the agency's findings, inferences, conclusions or decisions are clearly erroneous in view of the substantial evidence of record. Lee Rost, 827 P.2d at 88. We apply the same standard of review as did the Workers' Compensation court.

Synek argues that her treatments have been aimed at achieving stability and, therefore, that they are compensable "therapeutics" under § 29.24.2003, ARM, and not "maintenance" as defined in § 29.24.2004, ARM. She asserts that a patient whose condition is unstable at any point in time following the work-related injury is entitled to chiropractic treatment at the insurer's expense. She further contends that the hearing examiner's application of the chiropractic rules produces an absurd result which justifies

5

reversal.

In 1987, Berish wrote to the State Fund that Synek was being treated:

> as needed for temporary relief of pain. Her condition continues to deteriorate gradually and remains unstable. I am providing palliative care for her so that she may function more comfortably on a day to day basis.

Berish reaffirmed this characterization of Synek's treatments during the hearing. She testified that her treatment of Synek's condition was "palliative" in nature, a term she defined as offering relief from pain with no cure expected. Berish also testified that, as of November 1988, Synek had reached a state of "maximum medical improvement," and that she did not expect further improvement in Synek's condition.

Berish's testimony establishes that the chiropractic treatments for which Synek seeks compensation are not compensable under the applicable administrative rules. Section 24.29.2003, ARM, authorizes payment fox treatments necessary to return the patient to a preclinical status or establish a stationary status. Berish's characterization of Synek's condition was that it was worsening, was not expected to become preclinical and might never reach a stable condition. Thus, Berish's testimony supports the Department's determination that her treatments of Synek were not "therapeutics" for which workers' compensation is available under § 24.29.2003, ARM. Indeed, Berish's testimony that the treatments were provided "as needed," and for "temporary relief from pain," corresponds to the definition of "maintenance" contained in--and not compensable under--§ 24.29.2004, ARM, in that the treatments

6

were provided to optimize Synek's state of health by relieving pain as her condition deteriorates with age. We conclude that the hearing examiner's findings and decision were supported by substantial evidence and are not clearly erroneous.

Anticipating our conclusion that the hearing examiner's determination is supported by substantial evidence, Synek argues that §§ 24.29.2003 and 24.29.2004, ARM, are unreasonable, lead to an absurd result and constitute an improper basis for denial of her claim. She contends that Weis v. Div. of Workers' Compensation (1988), 232 Mont. 218, 755 P.2d 1385, supports her position. Her reliance on Weis is misplaced.

Weis involved two issues: whether the legislature, in enacting § 39-71-122, MCA (1985), intended to restrict the making of an "impairment rating" to licensed medical physicians; and whether the Division of Workers' Compensation properly exercised its rulemaking authority in promulgating an administrative rule under that statute which restricts impairment ratings to licensed Montana physicians holding a doctor of medicine degree. We first determined that the legislature did intend to limit impairment ratings to licensed medical physicians. On that basis, we concluded that the Division's administrative interpretation of the statute via its administrative rule corresponded to the statute and was not improper. Weis, 755 P.2d at 1387.

Synek apparently contends that our discussion of the second issue in Weis supports her argument that §§ 24.29.2003 and 24.29.2004, ARM, are unreasonable and produce an absurd result.

7

There, we stated that we give deference to an agency's interpretation of a statute via its administrative rules "unless the interpretation produces an absurd result." *Weis*, 755 P.2d at 1387 (citations omitted). In *Weis*, we concluded that the administrative rule essentially mirrored the legislature's intent in enacting the statute and, therefore, that the Division properly enacted the administrative rule at issue. *Weis*, 755 P.2d at 1387.

Here, unlike in *Weis*, the statute under which §§ 24.29.2003 and 24.29.2004, ARM, were promulgated contains broad rulemaking authority. Section 39-71-704(1), MCA (1979), authorizes compensation for "such other treatment as may be approved by the division for the injuries sustained." The administrative rules at issue provide compensation for some types of chiropractic treatment and prohibit payment for other types of treatment. The rules, which constitute the Department's "interpretation" of the statute, are entitled to deference unless they produce an absurd result. See *Weis*, 755 P.2d at 1387.

The administrative rules at issue, which include treatments of some kinds and exclude others, and which were promulgated pursuant to broad statutory language, are not facially or inherently arbitrary, capricious or unreasonable. Moreover, Synek does not articulate with any specificity the manner in which these rules produce an absurd result in this case under either the statute or the language of the rules themselves. Thus, under the general rule stated in *Weis*, §§ 24.29.2003 and 24.29.2004, ARM, are entitled to deference. On the basis of the record before us, we

8

conclude that the administrative rules at issue here do not produce an absurd result.

We hold that the Workers' Compensation Court did not err in affirming the Department's determination that Synek's chiropractic treatments were not compensable.

2. Were Synek's procedural due process rights violated by the Department's procedures?

Synek argues that she was denied due process by the Department's procedures because of the one-year delay between the hearing and the hearing examiner's decision. Relying on Carmichael v. Workers' Compensation Court (1988), 234 Mont. 410, 763 P.2d 1122, she asserts that the legislature's restructuring of the Department--including the elimination of the Division of Workers' Compensation--precipitated this delay and constituted an impermissible retroactive application of statutes.

The issue before us in Carmichael was whether a statutory mediation requirement enacted in 1987 which, by its terns, applied to all workers' compensation disputes regardless of when they arose, constitutionally could be applied to employment-related injuries which occurred prior to the effective date of the statute. The Workers' Compensation Court determined that the statute was applicable and that, while the extra tine required for mediation would cause some delay, the delay was not so substantial as to render application of the statute unconstitutional. Carmichael, 763 P.2d at 1126.

On appeal, Carmichael argued that retroactive application of

the mediation requirement unconstitutionally impaired his contractual rights by significantly delaying his right to petition the Workers' Compensation Court. We observed that Carmichael's contractual workers' compensation rights vested on the date of his injury and entitled him, as of that date, to directly petition the Workers' Compensation Court. Carmichael, 763 P.2d at 1124. The mediation statute subsequently enacted by the legislature required exhaustion of the mediation procedure prior to filing a petition in the Workers' Compensation Court, a delay of up to 100 days. Accordingly, we held that retroactive application of the mediation statute to Carmichael's work-related injury substantially and impermissibly impaired his vested contractual rights. Carmichael, 763 P.2d at 1126.

In the case presently before us, no new procedure or inherent delay is contained in the legislature's restructuring of the Department. As a result, unlike the situation in Carmichael, this case does not involve delay specifically and directly imposed by a legislatively-mandated procedural requirement. We conclude, therefore, that application of the statutes restructuring the Department does not violate Synek's right to due process.

In a related argument, Synek requests this Court to address the question of what amount of time is "reasonable" for adjudication of a workers' compensation petition. We decline to do so. Each workers' compensation petition and claim presents its own unique facts and procedural history; these and other legitimate considerations properly influence the amount of time reasonably

10

required to reach a decision. <u>See</u> Capers v. Flautt (S.C. App. 1991), **407** S.E.2d 660.

Finally, Synek argues that she is entitled to a 20% penalty, as well as attorney's fees, on reversal of the Workers' Compensation Court. Based on our conclusions herein, we need not address this argument.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

11

July 25, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

'Terry Spear
Attorney at Law
490 N. 31st ST., Ste. 116
Billings, MT 59101

Susan C. Witte, Legal Counsel
State Compensation Insurance Fund
P.O. Box 4759
Helena, MT 59604-4759

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *A. Gallagher*
Deputy