No. 98-263

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 338N

JOEL MASON,

Petitioner and Appellant,

v.

STATE OF MONTANA, DEPARTMENT OF PUBLIC

HEALTH AND HUMAN SERVICES, CHILD

SUPPORT ENFORCEMENT DIVISION,

Respondent and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joel B. Mason, Pro Se; Alberton, Montana

For Respondent:

Lonnie J. Olson, Special Assistant Attorney General,

Child Support Enforcement Division, Department of

Public Health and Human Services; Helena, Montana

Submitted on Briefs: August 13, 1998

Decided: December 30, 1998

Filed:

No

_____

Clerk


Justice Jim Regnier delivered the opinion of the Court.

¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2. Pursuant to a decree for divorce, Joel Mason was ordered to pay $60 per month in child support, as well as provide for his children's medical and dental insurance. Payments were required to be made through the Hawaii Child Support Enforcement Agency. Notwithstanding the provisions of the decree, he instead made payments directly to his former wife, Leanora Masters. In a proceeding initiated by Mason contesting an intent to withhold income by the State of Montana, Department of Public Health and Human Services, Child Support Enforcement Division (CSED), an Administrative Law Judge (ALJ) determined that the payments Mason made to Masters were to satisfy a debt, and that Mason was in arrears for delinquent child support payments of $2220. Mason sought judicial review in the District Court of the Fourth Judicial District, Missoula County. Mason appeals from the District Court's order affirming the decision of the ALJ. We affirm.

¶3. The following issues resolve this appeal:

¶4. 1. Was the ALJ's decision, affirmed by the District Court, clearly erroneous in finding that Mason owed $2220 in delinquent child support?

¶5. 2. Were Mason's substantial rights violated by the ALJ's failure to refer to certain witnesses and exhibits in the decision, by her improper referral to current and future child support, and her failure to issue an oath to a witness?

No

¶6. 3. Did the ALJ exceed her scope of authority by excluding evidence relating to the parties' agreement incident to and in contemplation of their divorce?

## FACTUAL BACKGROUND

¶7. On May 26, 1993, Joel Mason and his wife, now known as Leonora Masters, were granted a divorce by decree in the State of Hawaii Family Court of the Second Circuit. They were awarded joint custody of their two minor children, with primary physical custody going to Masters subject to Mason's reasonable rights of visitation. Mason was ordered to pay $60 per month child support through the Hawaii Child Support Enforcement Agency, as well as the children's medical and dental insurance.

¶8. Starting in May 1993, Mason made various payments directly to Masters on an irregular basis. Payments were made in the form of checks and other instruments, often in the amount of $210. On some of the checks, Mason wrote, "Child Support," and in some instances, "Medical." Masters cashed the checks, but at times wrote, "NEGOTIATED UNDER PROTEST" on them.

¶9. The primary care for the children was provided by Masters except for the summer months of 1993, 1995, and 1996 when the children stayed with Mason. Then, at the end of the summer in 1996, Mason did not return the children to Hawaii but, instead, enrolled them in a local school. The children continued to live with Mason, although the custody provisions in the divorce decree were never modified.

¶10. Mason contends that Masters consented to this change in physical custody. Masters disputes this. In addition, she maintains that Mason was delinquent in making his child support payments. Thus, in January 1997, the State of Hawaii sent an interstate transmittal request to CSED to enforce Mason's child support obligation in the amount of $2220, representing $60 per month from May 1993 through January 1997, minus $480 that Masters acknowledged receiving. Pursuant to § 40-5-202(1)(c), MCA, the CSED issued Mason a notice of intent to withhold income.

¶11. Mason challenged the CSED's notice, and hearings were held before Administrative Law Judge, Mary Kelly McCue, on March 13, 1997, and April 8, 1997. Judge McCue issued her decision and order on June 6, 1997, and found Mason

owed Masters the full amount of $2220. Judge McCue also found that Mason owed current and future child support of $60 per month, and directed the CSED to immediately proceed with income withholding.

¶12. On January 21, 1997, Judge John W. Larson of the Fourth Judicial District, Missoula County, issued a temporary award of custody of the children to Mason. Then, on June 26, 1997, Judge McCue clarified her previous order concluding that Judge Larson's custody award did not affect her June 6, 1997, decision because her decision only covered the period from May 1993 through January 1, 1997. This prompted CSED to move to delete that part of the ALJ's order that required Mason to pay current and future child support, an issue not before the ALJ. However, on July 7, 1997, Mason filed a petition for judicial review of Judge McCue's decision in the Fourth Judicial District, Missoula County, thus divesting Judge McCue of jurisdiction to decide the merits of the CSED's motion.

¶13. On March 3, 1998, Judge Henson of the Fourth Judicial District Court issued his opinion affirming Judge McCue's June 6, 1997, decision. Judge Henson declined to remand the matter of current and future child support in light of CSED's representation that it would renew its motion to amend the order with Judge McCue.

## ISSUE 1

¶14. Was the ALJ's decision, affirmed by the District Court, clearly erroneous in finding that Mason owed $2220 in delinquent child support?

¶15. When reviewing an agency decision, we apply the same standard as did the District Court. *See Synek v. State Compensation Mut. Ins. Fund* (1995), 272 Mont. 246, 250, 900 P.2d 884, 886. In this case, the District Court was required to follow the standard of review as set forth in the Montana Administrative Procedure Act at § 2-4-704, MCA. Section 2-4-704(2)(a)(v), MCA, provides that the agency's decision may be reversed if substantial rights have been prejudiced because the agency's findings, inferences, conclusions, or decisions are clearly erroneous in view of the substantial evidence of record. *See State Compensation Mut. Ins. Fund v. Lee Rost Logging* (1992), 252 Mont. 97, 102, 827 P.2d 85, 88. Thus, we must review the agency's findings of fact to determine that they are supported by substantial evidence and not clearly erroneous, and determine whether the conclusions of law are correct. *See Baldridge v. Board of Trustees, Rosebud County School Dist. No. 19* (1997), 287 Mont.

53, 58, 951 P.2d 1343, 1346. A finding is clearly erroneous if it is not supported by substantial evidence, if the trier of fact misapprehended the effect of the evidence or if this Court is left with a definite and firm conviction that a mistake has been made. *See In re R.B.O.* (1996), 277 Mont. 272, 277, 921 P.2d 268, 271.

¶16. Mason's problems began when he decided to disregard the requirements of the divorce decree and send payments directly to his former wife, rather than to the Hawaii Child Support Enforcement Agency. Thus, the ALJ was forced to decide on the evidence whether payments made directly to Masters qualified as debt reduction or discharged his child support obligation. Mason produced copies of checks made payable to and cashed by Masters. These checks actually exceeded the $480 acknowledged by Masters as child support by almost $3000. Most of the checks were written in the amount of $210, with a notation on the check indicating "Child support," and in some instances "Medical." Mason testified that these payments were made in satisfaction of $60 child support per month and $150 for the children's medical insurance. Masters testified, however, that these payments were made to satisfy other debts Mason owed her and that she never requested that Mason pay child support directly to her.

¶17. The ALJ faced conflicting testimony on this issue. From the record, it is clear that Mason fell behind in making child support payments on several occasions. Mason admitted that he had done so early in 1994. It is also clear that Mason was indebted to Masters. He admitted so at the hearing. Furthermore, Masters' notation on some of the checks indicating that they were negotiated under protest suggests that she disputed the purpose of these checks even before this litigation.

¶18. Based on the record, we conclude as did the District Court, that the ALJ's findings were supported by substantial evidence and not clearly erroneous. In doing so, we recognize that substantial evidence must be more than a scintilla, but may be less than a preponderance. *See State v. Shodair Hospital* (1995), 273 Mont. 155, 163, 902 P.2d 21, 26.

¶19. Mason also argues that the ALJ committed error by including in her calculations child support covering periods when the children were staying with him. He maintains that he and his former wife agreed that his support obligations were suspended during these periods.

¶20. We note that the divorce decree did not provide for suspension of child support obligations during such periods. Nevertheless, Mason argues the theory of equitable estoppel should relieve him of his obligation. In order to establish estoppel under this theory, Mason was required to produce clear and convincing evidence of (1) a substantial and continuing change of circumstances rendering enforcement of the original child support order inequitable; (2) a mutual agreement between the parties made in good faith; (3) conduct over a period of years consistent with the agreement; and (4) that the agreement may not impair the rights of any assignee of support payments. *See In re Marriage of Hooper* (1991), 247 Mont. 322, 324-25, 806 P.2d 541, 543.

¶21. The ALJ determined that Mason did not present sufficient proof that a mutual agreement existed between him and his former wife to modify his child support obligation. Again, the ALJ was faced with conflicting testimony. Mason alleged that Masters verbally agreed to discontinue child support payments while the children stayed with him. He also argued that she acquiesced to the children living with him through the school year in 1996. Masters, on the other hand, testified that she never forgave Mason's child support obligation, though she temporarily excused his tardy payments because of his financial situation. Masters also said that she strongly disagreed with the children living with Mason during the school year and tried to force their return to Hawaii.

¶22. Based on the record before us, we conclude that the ALJ's determination that Mason owes Masters $2220 in delinquent child support is supported by substantial evidence and is not clearly erroneous.

ISSUE 2

¶23. Were Mason's substantial rights violated by the ALJ's failure to refer to certain witnesses and exhibits in the decision, by her improper referral to current and future child support, and her failure to issue an oath to a witness?

¶24. Mason contends that the ALJ reached the wrong conclusion in this case because of procedural errors she committed during and after the administrative hearing. He contends that the ALJ failed to admit into evidence a written agreement made incident to and in contemplation of his divorce which establishes that any ancillary debts between the parties were resolved as of the date of their divorce. He also

contends that in her decision the ALJ failed to reference two other important documents in evidence: a note that Masters sent to Mason supporting his claim that the $210 checks included $150 for the children's medical insurance, and the District Court's order awarding him temporary custody of the children. Mason argues that these errors prejudiced his substantial rights because they were arbitrary and capricious in nature and amounted to the ALJ's abuse of discretion.

¶25. On appeal, we will not consider issues that were not properly addressed in the District Court. *See In re Marriage of Glass* (1985), 215 Mont. 248, 256, 697 P.2d 96, 101. Therefore, we cannot consider Mason's argument regarding the exclusion of the agreement made incident to his divorce. Mason failed to address this argument in his petition for judicial review and his brief to the District Court.

¶26. Mason properly raised his other arguments before the District Court, that the ALJ failed to reference in her decision Masters' note and the District Court's temporary custody order. However, simply because the ALJ did not reference this evidence in her decision does not mean that she ignored it. *See In re Marriage of Abrahamson* (1996), 278 Mont. 336, 343, 924 P.2d 1334, 1338-39.

¶27. Furthermore, it is clear that the ALJ gave full consideration to the District Court's temporary custody order. In so doing, the ALJ modified her original order to clarify that the temporary custody order did not alter her June 6, 1997, decision, which pertained to the time period before entry of the temporary custody order.

¶28. Mason further alleges that the ALJ failed to list in her decision two of his witnesses who testified at the hearing. He suggests that their testimony, therefore, was not considered. Mason again failed to raise this issue with the District Court; therefore, we will not address it here. In addition, from our review of the decision, we believe that the testimony of his witnesses was considered by the ALJ.

¶29. Finally Mason points out that the ALJ failed to swear in one of his witnesses. The witness was his current wife, Susan Mason, who wrote and signed checks paid to Masters and who kept an accounting of the payments. Mason assumes that her testimony was not considered. However, we note that Mason did not object to the ALJ's failure to swear in his witness. Notwithstanding Mason's failure to object, we conclude that under these circumstances, where Susan Mason's testimony was mostly duplicative of Joel Mason's, the ALJ's failure to swear her in was nothing more than

a simple oversight that amounts to harmless error.

**¶30. We conclude that Mason's substantial rights were not affected by any of the procedural defects he alleges.**

ISSUE 3

**¶31. Did the ALJ exceed her scope of authority by excluding evidence relating to the parties' agreement incident to and in contemplation of their divorce?**

**¶32. In his final argument, Mason asserts that the ALJ exceeded her scope of authority when she decided that the payments he made to Masters were for debts he owed her and not child support. He surmises that through her decision the ALJ effectively overruled the parties' written agreement incident to their divorce, a provision of which stipulated that all other debts between the parties were resolved at the time of the divorce.**

**¶33. This issue was not raised in the District Court and cannot be entertained for the first time on appeal. However, we also note that Mason himself testified to the existence of debt between the parties, contrary to his argument and the language of the agreement. There was clearly testimony by both Mason and Masters that there was unresolved debt between them.**

**¶34. We affirm.**

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON

No

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART