No. 98-418

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 168

295 Mont. 173

983 P.2d 363

DWIGHT E. DAHL, d/b/a

BIG SKY CONCRETE,

Appellant and Respondent,

v.

UNINSURED EMPLOYERS' FUND,

Respondent and Appellant.

APPEAL FROM: Workers' Compensation Court

State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel B. McGregor, Department of Labor & Industry, Helena, Montana

For Respondent:

Stephen A. Doherty, Smith & Doherty, Great Falls, Montana

Submitted on Briefs: January 18, 1999

Decided: July 13, 1999

Filed:

No

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶ The Uninsured Employers' Fund (UEF), a division of the Montana Department of Labor and Industry (Department), appeals from the findings of fact, conclusions of law, order and judgment entered by the Workers' Compensation Court. The Workers' Compensation Court reversed the Department's decision that Dwight E. Dahl, doing business as Big Sky Concrete, and Big Sky Concrete, Inc. (collectively referred to as "Dahl"), were uninsured employers under § 39-71-501, MCA (1993). We reverse the decision of the Workers' Compensation Court and remand for further proceedings consistent with this opinion.

¶ We address two issues on appeal:

I. ¶ 1. Did the Workers' Compensation Court err in concluding that § 39-71-401(1), MCA (1993), allowed an employer to have a separate entity procure workers' compensation insurance for its employees?

I. ¶ 2. Did the Department's hearings officer err in determining that the workers at issue were Dahl's employees under the 1993 Workers' Compensation Act?

**Factual and Procedural Background**

¶ After many years of involvement in the concrete business in various capacities, Dahl

started his own concrete business in Great Falls, Montana, in July of 1993. Dahl lacked business, accounting and general bookkeeping skills. As a result, he contracted with Olsten's Temporary Services (Olsten), a temporary service contractor, to provide him with concrete workers and to issue the workers' payroll checks, pay employer and employee taxes, and provide workers' compensation insurance. Dahl began obtaining workers from Olsten in July of 1993 and ceased doing so in November of 1993. Dahl again utilized Olsten's services from March through August of 1994.

¶ Olsten considered the workers supplied to Dahl to be Olsten employees. Dahl paid Olsten once a week for its services. When Dahl expressed concern about workers' compensation insurance, Olsten assured him that the workers were properly insured.

¶ In August of 1994, the UEF audited Dahl for compliance with the workers' compensation insurance requirements. After completing its audit, the UEF concluded that Dahl was the actual employer of the workers provided by Olsten, that the proper entity was not insuring the workers, and that Dahl could not continue to operate with the employees until he was in full compliance with workers' compensation insurance requirements. The UEF informed Dahl of its conclusions via a letter which also informed Dahl that he could request a contested case hearing to challenge the UEF's determinations and that the UEF would issue a cease and desist order if Dahl did not request a contested case hearing.

¶ Dahl discontinued his business on receipt of the UEF's letter and notified the Department that he desired to contest the UEF's determinations. Not realizing that Dahl had ceased operations and was contesting its conclusions, the UEF issued a cease and desist order. Thereafter, a Department hearings officer held a contested case hearing. The hearings officer found that Olsten provided workers' compensation insurance for the workers that it provided to Dahl but concluded that nine of the eleven workers were Dahl's employees rather than "temporary worker[s]" under § 39-71-116(29), MCA (1993). Thus, the hearings officer implicitly concluded that Dahl was an uninsured employer because he had not complied with the provisions of § 39-71-401(1), MCA (1993).

¶ Dahl petitioned the Workers' Compensation Court for judicial review. Dahl argued that the workers which Olsten provided were "temporary workers" under § 39-71-116(23), MCA (1993), and, since Olsten provided workers' compensation insurance for the workers, that he was not an uninsured employer. The Workers' Compensation Court concluded that § 39-71-401(1), MCA (1993), did not require Dahl to obtain workers'

compensation insurance in his own name and that, even if the workers were not "temporary worker[s]" under § 39-71-116(23), MCA (1993), and were, therefore, Dahl's employees, Dahl was not an uninsured employer because Olsten provided workers' compensation insurance for the workers. The UEF requested reconsideration but the Workers' Compensation Court denied its request. The UEF appeals.

**Standard of Review**¶ **The Workers' Compensation Court reviews the Department's decisions under the standards of review set forth in the Montana Administrative Procedure Act, §§ 2-4-101, et seq., MCA.** *C. Loney Concrete Const. v. Employment Relations Div.*, **1998 MT 230, ¶ 14, 964 P.2d 777, ¶ 14, 55 St. Rep. 961, ¶ 14. Section 2-4-704, MCA, provides in pertinent part:**

(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

(a) the administrative findings, inferences, conclusions, or decisions are:

(i) in violation of constitutional or statutory provisions;

(ii) in excess of the statutory authority of the agency;

(iii) made upon unlawful procedure;

(iv) affected by other error of law;

(v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(b) findings of fact, upon issues essential to the decision, were not made although requested.

¶ This Court utilizes the same standard of review as did the Workers' Compensation Court. *Loney*, ¶ 14 (citing *Synek v. State Compensation Mut. Ins. Fund* (1995), 272 Mont. 246, 250, 900 P.2d 884, 886). In so doing, we review the Department's findings of fact to

determine if they are clearly erroneous and the Workers' Compensation Court's conclusions of law to determine whether they are correct. See *Loney*, ¶ 14 (citing *Baldridge v. Board of Trustees, Rosebud County School Dist. No. 19* (1997), 287 Mont. 53, 57-8, 951 P.2d 1343, 1346).

## Issue 1.

*I. ¶ Did the Workers' Compensation Court err in concluding that § 39-71-401(1), MCA (1993), allowed an employer to have a separate entity procure workers' compensation insurance for its employees?*

¶ The UEF asserts that the Workers' Compensation Court erred in concluding that § 39-71-401(1), MCA (1993), did not require Dahl to obtain workers' compensation insurance in his own name and that it was sufficient that Olsten insured the workers. The UEF maintains that § 39-71-401(1), MCA (1993), standing alone, did not require Dahl to obtain workers' compensation coverage in his own name. Nevertheless, the UEF claims that § 39-71-401, MCA (1993), when interpreted to insure coordination with the Workers' Compensation Act as a whole, required Dahl to provide workers' compensation insurance for those workers who were not "temporary worker[s]" under § 39-71-116(23), MCA (1993), and who were, therefore, Dahl's "employees" under § 39-71-118, MCA (1993).

¶ Dahl agrees that § 39-71-401(1), MCA(1993), standing alone, did not require him to procure workers' compensation insurance for the workers which Olsten provided. Moreover, Dahl claims that the Workers' Compensation Court correctly interpreted § 39-71-401(1), MCA (1993), and that this Court would have to "insert language" into the statute to reach the conclusion that the Workers' Compensation Court erred.

¶ Section 39-71-401, MCA (1993), provides in pertinent part:

**Employments covered and employments exempted.** (1) Except as provided in subsection (2), the Workers' Compensation Act applies to all employers, as defined in 39-71-117 and to all employees as defined in 39-71-118. *An employer who has any employee in service under any appointment or contract of hire, expressed or implied, oral or written, shall elect to be bound by the provisions of compensation plan No. 1, 2, or 3.* Each employee whose employer is bound by the Workers' Compensation Act is subject to and bound by the compensation plan that has been elected by the employer.

(Emphasis added.) The 1993 Worker's Compensation Act defines an "uninsured employer" as an employer who has not complied with the provisions of § 39-71-401, MCA (1993). Section 39-71-501, MCA (1993).

¶ Statutory language must be construed according to its plain meaning and, if the language is clear and unambiguous, no further interpretation is required. *Balyeat Law, PC v. Pettit*, 1998 MT 252, ¶ 24, 967 P.2d 398, ¶ 24, 55 St.Rep. 1038, ¶ 24 (citation omitted). Section 39-71-401(1), MCA (1993), clearly and unambiguously requires the "employer" to elect to be bound by "compensation plan No. 1, 2, or 3." Thus, contrary to the Workers' Compensation Court's interpretation, § 39-71-401(1), MCA (1993), precludes a separate entity from providing workers' compensation insurance for an employer's employees; it simply provides that the *employer* must procure workers' compensation insurance (by either "compensation plan No. 1, 2, or 3") for its employees. See *Loney*, ¶ 12 (stating that if the employer's workers were not temporary workers then the temporary service contractor was not the workers' employer and that the UEF correctly ordered the employer to cease operations on the grounds that the employer was an uninsured employer even though the temporary service contractor provided workers' compensation insurance for the workers). See also *Buerkley v. Aspen Meadows Limited Partnership*, 1999 MT 97, ¶ 12, ___ P.2d ___, ¶ 12, 56 St.Rep. 415, ¶ 12 (stating that § 39-71-401, MCA, requires any employer of any employee to be bound by the provisions of compensation plan No. 1, 2, or 3). Moreover, since the plain language of § 39-71-401(1), MCA (1993), precludes a separate entity from providing workers' compensation insurance for an employer's employees, we do not, as the UEF suggests, need to look to the 1993 Workers' Compensation Act as a whole to reach the conclusion which the UEF advances.

¶ Accordingly, we hold that the Workers' Compensation Court erred in concluding that § 39-71-401(1), MCA (1993), allowed an employer to have a separate entity procure workers' compensation insurance for its employees.

## Issue 2.

*I. ¶ Did the Department's hearings officer err in determining that the workers at issue were Dahl's employees under the 1993 Workers' Compensation Act?*

No

¶ Dahl argued that the hearings officer erred in determining that nine of the workers which Olsten provided to Dahl were not "temporary worker[s]" under § 39-71-116(29), MCA (1993). The UEF, however, asserted that, under the Workers' Compensation Court's decisions in *C. Loney Concrete Construction, Inc.*, WCC #9305-6799 (December 28, 1993), the workers which Olsten provided to Dahl were not "temporary worker[s]" under § 39-71-116(29), MCA (1993).[(1)]

¶ Section 39-71-116(29), MCA (1993), defines "temporary worker" as "a worker whose services are furnished to another on a part-time or temporary basis to substitute for a permanent employee on leave or to meet an emergency or short-term workload." Section 39-71-117(2), MCA (1993), provides that "[a] temporary service contractor is the employer of a temporary worker for premium and loss experience purposes."

¶ In the *Loney* case before this Court, Loney, a concrete construction business contracted with Olsten (the same temporary service contractor involved in the instant case) for workers. *Loney*, ¶¶ 5 and 7. Loney paid Olsten to cover wages, overhead costs and, presumably, a profit. Olsten paid Loney's workers and provided their workers' compensation insurance. *Loney*, ¶ 9.

¶ The Department issued a cease and desist order to Loney on the basis that the workers utilized by Loney were not temporary workers and, therefore, that Loney, and not Olsten, was the employer responsible for their workers' compensation benefits and the payment of the premiums. *Loney*, ¶¶ 10-11. After the Department's hearings examiner determined that none of Loney's workers were temporary workers, Loney appealed to the Workers' Compensation Court. *Loney*, ¶ 11. The Workers' Compensation Court affirmed the hearings examiner's findings that certain workers were not temporary workers. *Loney*, ¶ 11. Loney appealed.

¶ We first noted that the Workers' Compensation Act defined a "temporary worker" as a worker deployed to meet either an emergency or a short-term need. *Loney*, ¶ 23. We stated that "an emergency is characterized by an immediate need that is unforseen." *Loney*, ¶ 23. Since the evidence showed that Loney consistently used the workers at issue for daily business functions such as job supervision, bookkeeping, and for keeping the minimum number of concrete workers to meet its baseline level of job activity, we held that Loney did not use the workers at issue to meet emergency needs. *Loney*, ¶ 23.

¶ We also stated that "[t]he Workers' Compensation Court appropriately distinguished core workers, who serve an employer's baseline needs, from temporary workers, who are only used short term." *Loney*, ¶ 23. Since the workers at issue served Loney's baseline needs and worked continuously and consistently for Loney, we held that Loney did not use the workers to meet short-term needs. *Loney*, ¶ 23. Therefore, we held that there was substantial evidence to support the hearings examiner's findings that the workers at issue were not "temporary worker[s]" under § 39-71-116(24), MCA (1991). *Loney*, ¶ 24.

¶ In the instant case, the undisputed evidence shows that the workers at issue worked for Dahl between six and fifteen weeks in 1993 and between eight and twenty weeks in 1994. Moreover, the evidence shows that Dahl had at least two workers for the weeks at issue and that Dahl frequently had four or five workers working during a week. Thus, Dahl did not use the workers to meet either an immediate need that was unforseen or for short-term

demands. Instead, Dahl used the workers as core workers to serve his daily business functions from June 1993 to November 1993 and again from March 1994 to August 1994. Thus, as in *Loney*, since the workers which Dahl used served his baseline needs and worked continuously and consistently for him, they were not "temporary worker[s]" under § 39-71-116(29), MCA (1993). Accordingly, we hold that the Department's hearings examiner correctly determined that the nine workers at issue were Dahl's employees under the 1993 Workers' Compensation Act.

¶ As a final point, we note that Dahl asserted in the Workers' Compensation Court that the hearings examiner erred in not apportioning the uninsured employers penalty between Big Sky Concrete, Inc. and Dahl personally, and that § 39-71-116(23), MCA (1993), is void for vagueness. Notwithstanding, neither the Workers' Compensation Court nor this Court has considered the merits of these issues. Hence, we remand this case to the Workers' Compensation Court to resolve them.

¶ Reversed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray concurs and dissents.

¶ I join in the Court's opinion on issue one, which holds that Dahl could not have a separate entity purchase workers' compensation insurance to cover his workers. I respectfully dissent from the Court's opinion on issue two, however, which is the question of whether the workers at issue were Dahl's employees under the 1993 Workers' Compensation Act.

¶ I do not disagree with the law set forth by the Court in issue two. Rather, it is my view that--given the odd procedural posture in which this case is before us--we should not address this issue, but should remand to the Workers' Compensation Court for resolution. The issue of whether the workers were Dahl's employees was, in fact, raised by Dahl--but not addressed--in the Workers' Compensation Court because that court determined the issue of whether Dahl was required to provide his own workers' compensation insurance was dispositive. Since we are remanding on the other issues reserved by the Workers' Compensation Court, we should do the same with the issue of whether the workers were Dahl's employees.

¶ I could not agree more with the Court's concern for judicial economy. Moreover, I understand its interest in furthering judicial economy by addressing the hearing examiner's determination that nine of the workers provided to Dahl were his employees, rather than having the Workers' Compensation Court do so. In this case, however, it is my view that Dahl's interest in having an opportunity to brief his issue of whether the workers provided by Olsten's were, in fact, his employees must trump our concern for judicial economy. Because the Workers' Compensation Court did not address this issue, it is not before us and Dahl quite properly did not address it in this appeal. For this Court to address an issue of such critical importance to a party to the appeal, without allowing that party to be heard, strikes me as unfair at the very least.

¶ Nor can I draw any consolation in this regard from the similarities between the present case and *Loney*. There, the case proceeded in an orderly manner from the Department's hearing examiner stage to a review by the Workers' Compensation Court. The hearing examiner determined that none of the workers were temporary workers; on appeal, the Workers' Compensation Court affirmed the finding that certain workers were not temporary workers, but reversed the hearing examiner's finding as to the remaining workers. Loney appealed to this Court and we affirmed the Workers' Compensation Court's decision that *certain* of the workers were not temporary workers but were his employees. *Loney*, ¶¶ 11, 25. Thus, it is clear that, in *Loney,* the Workers' Compensation Court performed a careful analysis to determine which of the workers at issue were actually Loney's baseline, or core, workers and, consequently, his employees under the workers' compensation statutes.

¶ In the present case, the Court does not explain the basis for its determination that all of the workers at issue were "core workers to serve [Dahl's] daily business functions." The Court notes that, in the aggregate, the workers worked between six and fifteen weeks in 1993 and between eight and twenty weeks in 1994. In addition, the Court points to the evidence showing that Dahl had "at least two workers for the weeks at issue and that Dahl frequently had four or five workers working during a week." Nothing in that recitation of evidence, however, resolves the questions of how much work was Dahl's baseline load and how many of the workers were core workers needed to fill actual baseline needs as opposed to short-term workers needed to perform work over and above Dahl's baseline needs. It may well be true that, since Dahl used at least two workers for each of the weeks at issue, those workers were core workers needed for his baseline needs. It is not nearly as clear, however, that the additional workers also were core workers.

¶ I would remand the issue regarding whether the workers were Dahl's employees--an issue not addressed by the Workers' Compensation Court--to that court, together with the other issues being remanded. Because a remand is

necessary on other issues, I cannot see how judicial economy is advanced by not remanding this issue as well, particularly since doing so would provide Dahl the opportunity to brief this issue in a subsequent appeal if one is to occur.

/S/ KARLA M. GRAY

1. [1] We recognize that the Workers' Compensation Court did not address Dahl's argument that the hearings officer erred in determining that nine of the workers which Olsten provided to Dahl were not "temporary worker[s]" under § 39-71-116(29), MCA (1993). In general, this Court does not address issues that were not addressed by the lower court. See Rule 2(a), M.R.App.P. However, our standard of review in cases where the Workers' Compensation Court has reviewed a decision form the Department is the same as the standard of review utilized by the Workers' Compensation Court. *Loney*, ¶ 14 (citing *Synek*, 272 Mont. at 250, 900 P.2d at 886). Consequently, in the interests of judicial economy, we will review the hearings examiner's determination that nine of the workers which Olsten provided Dahl were not "temporary worker[s]" under § 39-71-116(29), MCA (1993), and, thus, that they were Dahl's employees under § 39-71-118, MCA (1993).