FILED

July 14 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0726

DA 14-0726

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 199

GREGORY STOKES and SHERRY STOKES,

      Plaintiffs and Appellants,

      v.

GOLDEN TRIANGLE, INC.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV 11-259
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Michael G. Barer, Barer Law Offices; Great Falls, Montana

          Benjamin R. Graybill, Graybill Law Firm, P.C.; Great Falls, Montana

      For Appellee:

          Oliver H. Goe, Morgan M. Weber, Browning, Kaleczyc, Berry & Hoven,
PC; Helena, Montana

Submitted on Briefs:  May 20, 2015
Decided:  July 14, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Gregory Stokes (Stokes) appeals from an order issued by the Eighth Judicial District Court, Cascade County, granting summary judgment in favor of Golden Triangle, Inc. (Golden Triangle). After recovering workers' compensation insurance benefits in the amount of $207,147, Stokes brought a civil action against his employer, Golden Triangle, seeking additional damages for injuries he sustained during the course of his employment. Stokes contended Golden Triangle was an uninsured employer under the Workers' Compensation Act (Act), thereby permitting him to pursue a civil claim against Golden Triangle. The District Court determined that Golden Triangle was an insured employer under the Act and entitled to tort immunity pursuant to § 39-71-411, MCA.

¶2    We affirm and address the following issue on appeal:

¶3    *Did the District Court err by concluding that Golden Triangle was entitled to tort immunity pursuant to § 39-71-411, MCA, of the Workers' Compensation Act?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Golden Triangle is a Montana corporation that does business as First National Pawn in Great Falls. FNP, Inc. (FNP) is a corporation that owns and controls pawn shops in Billings and Bozeman. Golden Triangle and FNP have the same shareholders, but are separate corporate entities.

¶5    On June 11, 2009, PayneWest Insurance Company (PayneWest), an insurance broker, submitted an application to Employers Compensation Insurance Company (ECIC), requesting workers' compensation insurance on behalf of FNP and Golden Triangle. Nathan Allie (Allie), an insurance agent for PayneWest, handled the account

2

and facilitated preparation of the application. The application listed FNP as the sole named applicant, but provided Golden Triangle's premises as an additional location; listed Golden Triangle's Federal Employer Identification Number (FEIN); and included Golden Triangle's payroll information. Allie testified that by providing Golden Triangle's information, principally its FEIN, the application was clear that Golden Triangle was requesting insurance as an additional named insured.

¶6 Allie received a quote back from ECIC and prepared a Workers' Compensation Summary (Summary) for Steve Costin, an employee of FNP and Golden Triangle, to allow Costin to decide whether to insure the corporations through ECIC. The Summary identified both FNP and Golden Triangle under the Schedule of Named Insureds, and stated that an entity must be named in the insurance policy to receive coverage. After reviewing the Summary, Costin approved insuring through ECIC.

¶7 On June 26, 2009, PayneWest issued an Insurance Binder. The Binder listed FNP as the first named insured, listed Golden Triangle as an additional named insured, and stated the Binder would be cancelled when replaced by a policy. Allie testified that PayneWest issued the Insurance Binder to inform FNP and Golden Triangle of the purchased coverage for the upcoming year.

¶8 On June 29, 2009, ECIC issued workers' compensation insurance policy no. EIG115294800 (hereinafter, the Policy). The Policy listed FNP as a named insured, but did not designate Golden Triangle as a named insured or otherwise reference Golden

3

Triangle or Golden Triangle's premises. However, the Policy used Golden Triangle's payroll to calculate the premiums.

¶9 In addition to the Policy, PayneWest retained what Allie described as an electronic copy of the Policy. Attached to the electronic copy was a Schedule of Supplementary Names, which identified Golden Triangle as an additional named insured. Allie testified that the Schedule of Supplementary Names was created from the information submitted on the application and that it matched the application submitted to ECIC. Allie testified that, because Golden Triangle was a named insured in the Schedule of Supplementary Names, it was a covered insured, regardless of whether the Policy itself expressly identified Golden Triangle. He also testified that PayneWest had authority under its contract with ECIC to bind ECIC and that PayneWest uses the electronic copy to decide whether an entity is insured.

¶10 On February 18, 2010, while in the course and scope of his employment with Golden Triangle, Stokes suffered serious injuries when a large column of ice, which had formed on an outside corner of the building where Stokes worked, fell and hit Stokes on the head. The same day, Golden Triangle sent a First Report of Injury to ECIC, identifying FNP as Stokes' employer. Stokes filed a workers' compensation claim with ECIC. ECIC accepted the claim and, as of June 4, 2013, made payments in the amount of $207,147. Gina Douglas, an underwriter for ECIC, testified that Golden Triangle was a covered insured under the Policy, the benefit payments were made on behalf of Golden

4

Triangle, and ECIC would not have made the payments had Golden Triangle not been a covered insured under the Policy.

¶11 Following an inquiry by the State of Montana Workers' Compensation Division regarding Stokes' claim, ECIC reviewed the Policy. ECIC determined that, while Golden Triangle was a covered insured under the Policy, Golden Triangle was inadvertently not expressly identified on the Policy. Consequently, ECIC issued a policy endorsement to clarify that Golden Triangle was a covered insured. Golden Triangle's premium remained unchanged after the endorsement.

¶12 On November 1, 2012, Stokes brought the present action against Golden Triangle. Stokes alleged that Golden Triangle was an uninsured employer at the time of the accident. Golden Triangle submitted a motion to dismiss, which the District Court converted into a motion for summary judgment and, after entertaining argument by the parties, issued an order granting summary judgment in favor of Golden Triangle. The court determined that, given the affidavits and documents submitted by Golden Triangle, "there is no dispute in the record regarding whether or not Golden Triangle was an intended insured under [the] Policy." The District Court concluded that Golden Triangle was an insured employer under the Act and therefore was entitled to claim immunity pursuant to § 39-71-411, MCA.

**STANDARD OF REVIEW**

¶13 We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Steichen v. Talcott*

5

*Props.*, LLC, 2013 MT 2, ¶ 7, 368 Mont. 169, 292 P.3d 458. Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

**DISCUSSION**

¶14 *Did the District Court err by concluding that Golden Triangle was entitled to tort immunity pursuant to § 39-71-411, MCA, of the Workers' Compensation Act?*

¶15 "The Montana Constitution sets forth the basis for the workers' compensation exclusive remedy provision." *Walters v. Flathead Concrete Prods.*, 2011 MT 45, ¶ 11, 359 Mont. 346, 249 P.3d 913. Article II, Section 16 provides, in part, that "[n]o person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state." This constitutional provision "is implemented by Section 39-71-411, MCA." *Adsem v. Roske*, 224 Mont. 269, 271, 728 P.2d 1352, 1353 (1986).

¶16 Section 39-71-411, MCA, of the Act grants insured employers tort immunity from negligence actions brought by their employees when the complained of injury is work related, providing that an insured employer "is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act . . . ." However, uninsured employers are not entitled to the benefit of tort immunity. Section 39-71-508(1)(b), MCA, permits an employee who suffers an injury while

6

working for an "uninsured employer" to "pursue all remedies" against the employer, including but not limited to "a damage action against the employer." An "uninsured employer" is defined as an "employer who has not properly complied with the provisions of 39-71-401." Section 39-71-501, MCA. In turn, § 39-71-401, MCA, requires that an employer "elect to be bound" by the provisions of a workers' compensation insurance plan.

¶17 Stokes argues the District Court erred by concluding that Golden Triangle was an insured employer. He argues Golden Triangle was not a covered insured under the Policy, reasoning that the Policy "alone created ECIC's obligation to provide workers' compensation insurance" and "[b]ecause the Policy did not mention Golden Triangle, it did not insure Golden Triangle." Stokes suggests that the insurance benefits he received were conveyed to him because FNP, not Golden Triangle, was insured under the Policy. He asserts Golden Triangle is "a distinct corporation, separate from FNP" and "[c]ompliance with the requirement to elect to be bound to a plan that provides workers' compensation insurance can only be satisfied when an employer actually obtains insurance, not by having another entity insure its employees." Stokes contends this Court's decisions in *Total Mechanical Heating & Air Conditioning v. Employment Rels. Div.*, 2002 MT 55, 309 Mont. 84, 50 P.3d 108, and *Dahl v. Uninsured Employers' Fund*, 1999 MT 168, 295 Mont. 173, 983 P.2d 363, are controlling and require reversal.

¶18 We have explained that "an insurance policy, like any other contract, must be given that interpretation which is reasonable and which is consonant with the manifest

7

object and intent of the parties." *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 269, ¶ 27, 352 Mont. 105, 214 P.3d 1260 (citation and brackets omitted). Under general principles of contract law, insurance policies are to be construed "strictly against the insurer and in favor of the insured." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469.

¶19 Golden Triangle and ECIC agree that Golden Triangle was a covered insured under the Policy. Only Stokes, a third-party, disputes Golden Triangle's status, asking this Court to disregard the stated intent of the parties to their contract. However, the stated intent of Golden Triangle and ECIC is supported in the record. First, the Policy used Golden Triangle's payroll to calculate the premium. In doing so, the Policy contemplated that coverage to Golden Triangle's employees would be provided. Although Stokes maintains the Policy used Golden Triangle's payroll because Golden Triangle misrepresented its employees as FNP's employees in the application, the record refutes his contention. The application submitted to ECIC provided Golden Triangle's information, including Golden Triangle's FEIN. Allie testified the information made clear to ECIC that Golden Triangle was requesting insurance as a covered insured, and ECIC agreed that they were not misled. Second, the associated documents, including the Insurance Binder, Schedule of Supplementary Names, and the Summary, all named Golden Triangle as a covered insured. Third, the premiums remained unchanged after ECIC issued the corrected endorsement stating that Golden Triangle was a covered insured at the time of the accident. Fourth, Douglas testified that ECIC's failure to

8

expressly name Golden Triangle was inadvertent and Golden Triangle had always been a covered insured under the Policy. Lastly, ECIC paid, and Stokes accepted, benefits under the Policy in Golden Triangle's name. Although Stokes suggests that the benefits were paid in FNP's name, noting the misidentification of his employer in the First Report of Injury, there is no credible evidence showing ECIC mistakenly paid the benefits on behalf of FNP. Rather, Douglas testified the benefits were paid on behalf of Golden Triangle, not FNP, and ECIC would have not made the payments if Golden Triangle had not been a covered insured. Therefore, given the evidence of intent to insure, we agree with the District Court that Golden Triangle was a covered insured.

¶20 Stokes argues that our decisions in *Total Mechanical* and *Dahl* require a different conclusion. We disagree. In *Total Mechanical*, the Uninsured Employers' Fund (UEF) determined that Human Dynamics Corporation (Dynamics) was uninsured and imposed penalties accordingly. *Total Mechanical*, ¶¶ 17, 29. Dynamics had claimed it was insured under a policy issued by Credit General Insurance Company (CGIC), but the UEF disagreed and listed several concerns, the primarily concern being the policy did not name Dynamics as an insured. *Total Mechanical*, ¶¶ 6, 36. We affirmed UEF's determination, concluding there was no "credible evidence that Dynamics was actually insured under the CGIC policy." *Total Mechanical*, ¶ 40. We explained that Dynamics had failed to produce a "corrected endorsement from CGIC, or any other confirmatory documentation of coverage" and the "only 'proof' offered by Dynamics was the unpersuasive, self-serving testimony of Dynamics' president." *Total Mechanical*, ¶ 40.

9

Here, in contrast, the credible evidence shows Golden Triangle was actually insured under the Policy. Unlike Dynamics, Golden Triangle produced documents demonstrating proof of insurance, including a corrected endorsement issued by ECIC. Therefore, *Total Mechanical* is distinguishable in that Golden Triangle has offered ample proof of insurance rather than unpersuasive, self-serving testimony.

¶21 In *Dahl*, the owner of a concrete business, Dwight Dahl, contracted with Olsten's Temporary Services (Olsten), a temporary service contractor, to provide him with concrete workers and to obtain workers' compensation insurance for his employees. *Dahl*, ¶ 5. After completing an audit, the Uninsured Employers' Fund concluded that Dahl was an uninsured employer because the proper entity was not insuring the workers. *Dahl*, ¶ 7. Dahl conceded he did not have workers' compensation insurance in his own name, but maintained that nothing in the Act required him to do so. *Dahl*, ¶ 9. The Workers' Compensation Court agreed, concluding that since Dahl's employees were insured under Olsten's insurance policy, Dahl was not an uninsured employer. *Dahl*, ¶ 9. This Court reversed, holding the Workers' Compensation Court erred by failing to conclude that § 39-71-401, MCA, required Dahl to obtain workers' compensation insurance in his own name. *Dahl*, ¶ 17. We explained that, because § 39-71-401, MCA, "clearly and unambiguously requires the 'employer' to elect to be bound," it is not enough that a separate entity has obtained workers' compensation insurance for the employer's employees. *Dahl*, ¶ 16. We reasoned the plain language of § 39-71-401, MCA, requires the "*employer* [to] procure workers' compensation insurance . . . for its

10

employees." *Dahl*, ¶ 16 (emphasis in original). Here, Golden Triangle has, unlike Dahl, actually obtained workers' compensation insurance for its employees. While Golden Triangle was not expressly named in the Policy at the time of injury, Golden Triangle has established that this was an inadvertent administrative error and that it was a covered insured under the Policy. Therefore, *Dahl* is likewise distinguishable in that Golden Triangle has in fact obtained insurance coverage in its own name.

¶22 Stokes also argues that Golden Triangle failed to comply with § 39-71-433, MCA, which governs the purchase of workers' compensation coverage by a group of two or more employer entities and was thus an uninsured employer under our decision in *Buerkley v. Aspen Meadows Ltd. Pshp.*, 1999 MT 97, 294 Mont. 263, 980 P.2d 1046. Noting the statute provides that "[t]wo or more business entities *may* join together to form a group," Golden Triangle responds that compliance with § 39-71-433, MCA, is optional, but this is a misreading of the statute. Participation in an employer group is optional, but compliance with the statute by such groups is not.

¶23 In *Buerkley*, we held that the defendants were uninsured employers because they "had not properly complied with the enrollment requirement of § 39-71-401, MCA," for their workers' compensation insurance plan. *Buerkley*, ¶ 13. Assuming, arguendo, that Golden Triangle failed to comply with the group purchase requirements of § 39-71-433, MCA, the facts here establish that Golden Triangle did comply with § 39-71-401, MCA, by "elect[ing] to be bound by the provisions of compensation plan No. 1, 2, or 3," which is all that § 39-71-501, MCA, requires to be an insured employer and thereby receive tort

11

immunity under § 39-71-411, MCA. *Buerkley* is therefore distinguishable and does not require reversal.

¶24 In sum, the evidence presented before the District Court shows that, although ECIC inadvertently failed to identify Golden Triangle in the Policy, ECIC and Golden Triangle intended Golden Triangle to be a covered insured under the Policy and ECIC paid out insurance benefits in accordance therewith. We conclude the District Court did not err in concluding that Golden Triangle was an insured employer under the Workers' Compensation Act and therefore was entitled to tort immunity pursuant to § 39-71-411, MCA.

¶25 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

12