No. 98-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 97

294 Mont. 263

980 P.2d 1046

TREVOR BUERKLEY,

Plaintiff and Appellant,

v.

ASPEN MEADOWS LIMITED PARTNERSHIP, a limited partnership,

PARKVIEW CONVALESCENT CARE, a partnership, BILL McLAIN,

a general partner of Aspen Meadows and partner of Parkview, STEVE

McLAIN, a partner of Parkview and COMCARE, INC., a partner of Parkview,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gene R. Jarussi; Jarussi & Bishop; Billings, Montana

For Respondents:

Patrick E. Melby; Luxan & Murfitt, PLLP; Helena, Montana

(for Aspen Meadows, Parkview Convalescent Care, Bill McLain,

and Steve McLain)

No

Submitted on Briefs: October 15, 1999

Decided: May 17, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. The plaintiff, Trevor Buerkley, filed suit in the District Court for the Thirteenth Judicial District in Yellowstone County to recover damages from the defendants, Aspen Meadows, Parkview Convalescent Care, and Bill McLain and Steve McLain, for an injury to his hand. The District Court awarded summary judgment in favor of the defendants. We reverse the judgment of the District Court.**

**¶2. The issue on appeal is whether the District Court erred when it concluded that the Workers' Compensation Act was Buerkley's exclusive remedy.**

## FACTUAL AND PROCEDURAL BACKGROUND

**¶3. Trevor Buerkley was hired by Parkview Convalescent Care as a maintenance worker on August 9, 1993. Prior to the start of his employment, Buerkley was not asked to submit an employment application, nor was he required to comply with any of Parkview's other existing hiring procedures. Until the time of his injury, two months after he started work at Parkview, Buerkley worked a normal forty-hour week but did not use a time clock as other employees did, his paycheck was not drawn from Parkview's payroll account, and no payroll deductions were taken from his paycheck. In other words, Parkview employed Buerkley "under the table." Buerkley was not held out by Parkview to others as its employee. Furthermore, Buerkley was not reported as an employee on the payroll reports provided to the**

Montana Health Network's Workers' Compensation Insurance Trust by which Parkview's employees were provided with coverage for work-related injuries.

¶4. Aspen Meadows is a limited partnership which operates a retirement community. It is a separate business entity; however, it has common principals with Parkview. The two homes occasionally shared personnel and other resources. On October 8, 1993, Aspen's maintenance director contacted the maintenance director for Parkview and asked him to send Buerkley to Aspen with one of Parkview's snowblowers to clear the remains of an early snow from Aspen's parking lot. While Buerkley was operating the snowblower at Aspen, the teeth of the machine became blocked with heavy, wet snow. Buerkley inserted his left hand into the snowblower to clear the blockage and seriously injured his hand.

¶5. Sometime after the accident, Buerkley completed an employment application and portions of other employee paperwork for both Parkview and Aspen. Both applications were back-dated to reflect an employment date for Buerkley of September 27, 1993, prior to the date of his injury. Beginning October 14, 1993, Buerkley's paychecks began to reflect deductions for workers' compensation, Medicare, and FICA; however, they were still drawn on an account which was not Parkview's regular payroll account. Beginning October 25, 1993, Buerkley began using Parkview's time clock to record his hours worked. After the accident, Buerkley was also issued at least one paycheck by Aspen, despite the fact that the morning he was injured was the only time he performed any labor at Aspen. The paycheck from Aspen was also drawn on an account different from its regular payroll account.

¶6. On December 8, 1993, Aspen filed an "Employer's First Report of Notice" with Montana Health Network. Compensation Adjusters, Inc. was authorized by contract to adjust MHN claims and to pay all benefits. It determined that Buerkley was entitled to benefits and paid all medical claims and compensation benefits. Compensation Adjusters also made Buerkley a settlement offer for a release of any future permanent partial disability claim. Buerkley rejected the settlement offer and brought suit for damages in District Court. Compensation Adjusters discovered that Buerkley's employment records had been falsified after it received notice of the lawsuit.

## DISCUSSION

**¶7. Did the District Court err when it concluded that the Workers' Compensation Act was Buerkley's exclusive remedy?**

**¶8. Our standard of review on appeal from summary judgment orders is *de novo*. *See Motaire v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ.P., which provides that summary judgment is appropriate when where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Moreover, evidence must be viewed in the light most favorable to the party opposing the motion, *see Bowen v. McDonald* (1996), 276 Mont. 193, 199, 915 P.2d 201, 205, and all reasonable inferences must be drawn in favor of the party opposing the motion. *See Porter v. Galarneau* (1996), 275 Mont. 174, 179, 911 P.2d 1143, 1146.**

**¶9. On appeal, Buerkley contends that an employer who has not properly complied with the requirements of § 39-71-401, MCA (1993), is an "uninsured employer" pursuant to § 39-71-501, MCA (1993), and, therefore, subject to the civil remedies provided pursuant to §§ 39-71-508 and -515, MCA (1993), and should not, as a matter of law and public policy, be allowed to rely on the exclusive remedy provision found at § 39-71-411, MCA.**

**¶10. The defendants argued, and the District Court agreed, that whether or not Buerkley's employment was reported to the trust by which they were self-insured, they elected coverage under the Workers' Compensation Act and, therefore, pursuant to § 39-71-411, MCA, the Workers' Compensation Act was Buerkley's exclusive remedy.**

**¶11. Section 39-71-411, MCA (1993), provides in relevant part:**

For all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive. Except as provided in part 5 of this chapter for uninsured employers and except as otherwise provided in the Workers' Compensation Act, an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act . . . .

The defendants contend that because they were covered under the Act the provisions of the Act are exclusive. However, § -411 specifically provides an exception to the rule of exclusivity where provided in part 5 for uninsured employers. Uninsured employers are defined at § 39-71-501, MCA (1993), as follows: "For the purposes of 39-71-501 through 39-71-511 and 39-71-515 through 39-71-520, 'uninsured employer' means an employer who has not <u>properly</u> complied with the provisions of 39-71-401." (Emphasis added.)

**¶12. Section 39-71-401, MCA, requires any employer of any employee to enroll in and be bound by the provisions of Compensation Plan No. 1, 2, or 3. Defendants contend that they did enroll in and were bound by Compensation Plan No. 1 and, therefore, they complied with § 39-71-401, MCA. However, § -501 defines an uninsured employer as one who has "not <u>properly</u> complied" with the enrollment obligations. (Emphasis added.)**

**¶13. In this case, Bill McLain, who was a general partner in Parkview Convalescent Care at the time of Buerkley's employment, testified that Parkview was insured against workers' compensation by the Montana Health Network, which calculated premiums based on the previous year's payroll. He testified that it would have been a breach of the agreement with Montana Health Network to omit an employee from that payroll report. From this testimony, we conclude that a condition of Parkview's enrollment in Plan No. 1 of the Workers' Compensation Act was the accurate and honest identification of its employees on a quarterly basis, and that by deleting Buerkley's name from that payroll report, defendants had not properly complied with the enrollment requirement of § 39-71-401, MCA, and, therefore, were an "uninsured employer" for purposes of part 5 of the Workers' Compensation Act.**

¶14. Section 39-71-508, MCA (1993), provides in relevant part that:

An employee who suffers an injury arising out of and in the course of employment while working for an uninsured employer as defined in 39-71-501 . . . may pursue all remedies concurrently, including but not limited to:

(1) a claim for benefits from the uninsured employers' fund;

(2) a damage action against the employer in accordance with 39-71-509;

(3) an independent action against an employer as provided in 39-71-515; or

(4) any other civil remedy provided by law.

**¶15. Section 39-71-515, MCA (1993), provides in relevant part that:**

(1) An injured employee or the employee's beneficiaries have an independent cause of action against an uninsured employer for failure to be enrolled in a compensation plan as required by this chapter.

. . . .

(4) The amount of recoverable damages in such an action is the amount of compensation that the employee would have received had the employer been properly enrolled under compensation plan No. 1, 2, or 3.

(5) A plaintiff who prevails in an action brought under this section is entitled to recover reasonable costs and attorney fees incurred in the action, in addition to his damages.

**¶16. The purpose of the Workers' Compensation Act is to effectuate a compromise between industry and labor. "[W]orkers received guaranteed no-fault recovery, and industry was relieved of the possibility of large . . . recoveries in the tort system."** *Stratemeyer v. Lincoln County* **(1996), 276 Mont. 67, 74, 915 P.2d 175, 179. Workers' compensation statutes are often described as a** *quid pro quo* **exchange of rights and remedies.** *See* **2A Arthur Larson, The Law of Workman's Compensation § 65.40 (perm. ed. rev. vol. 1998). We have held that where injuries are outside the scope of those covered by the Act, there is no** *quid pro quo* **and, therefore, the exclusive remedy is unavailable as a defense to tort claims.** *See Stratemeyer***, 267 Mont. at 76, 915 P.2d at 180.**

**¶17. Similarly, the requisite** *quid pro quo* **is absent when an employer has deliberately avoided the cost of insuring an employee by failing to acknowledge his existence in its payroll records. In such cases, an employer should not be able to take refuge behind the exclusive remedy provision.**

**¶18. Therefore, we conclude, based on the plain language of the Act and its historical**

**purpose, that for the purpose of those remedies provided in part 5 of the Workers' Compensation Act, Buerkley's employer at the time of his injury was uninsured as defined in § 39-71-501, MCA (1993), and the District Court erred by holding otherwise. Our holding is limited to the facts in this case and does not address an insurer's obligation to an employee of an employer who has not fully complied with the Act or its insurance contract.**

**¶19. The judgment of the District Court is reversed.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ KARLA M. GRAY