No. 01-057

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 55

TOTAL MECHANICAL HEATING & AIR CONDITIONING;
RIVERSIDE CONSTRUCTION; ABC SEAMLESS; AAA
CONSTRUCTION OF MISSOULA; HI COUNTRY MINI
MOTORS; DEE MORTENSEN, d/b/a DEE'S DRAPERY
SHOP; FLATHEAD JANITORIAL, INC.; RAINGLOW
SERVICES, INC.; TRI-STAR PIZZA, d/b/a LITTLE
CAESAR; MONTANA GLASS, INC.; JOHNSON BROTHERS
CONTRACTING; EUREKA PELLET MILLS, INC.;
ENVIROHEAT; and HUMAN DYNAMICS CORPORATION,

Petitioners and Appellants,
and

HRC/HRC ARMCO, INC.

v.

EMPLOYMENT RELATIONS DIVISION,
UNINSURED EMPLOYERS' FUND

Respondent.

APPEAL FROM:   Workers' Compensation Court
In and for the State of Montana
The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:
Andrew J. Utick, Helena, Montana, Dennis Lind, Missoula Montana (Total  Mechanical); Peter
J. Stokstad, Missoula, Montana (HRC)

For Respondent:
Daniel B. McGregor, Montana State Fund (UEF),Helena, Montana

Submitted on Briefs: September 27, 2002
Decided: March 26, 2002
Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    On June 26, 2000, the Workers' Compensation Court of the State of Montana reversed the State of Montana Department of Labor and Industry Hearings Bureau, concluding that the thirteen petitioner companies were uninsured employers for specified periods of time and, as such, were subject to the statutory penalties originally assessed by the Department of Labor and Industry, Employment Relations Division, Uninsured Employers' Fund.  We affirm.

## ISSUES

¶2    The following issues are raised by the parties:

     a.    Was the correct burden of proof applied to the parties in this case?
     b.    Were the Montana Department of Labor and Industry's (DLI) hearing officer's findings of fact supported by substantial credible evidence in the record?

     c.    Were the Workers' Compensation Court's (WCC) conclusions of law legally correct?

     d.    Did the WCC erroneously decide this case on a previously unraised issue?

     e.    Did the WCC err in affirming the penalty assessments issued by the Uninsured Employers' Fund (UEF or Fund)?

## FACTUAL AND PROCEDURAL BACKGROUN D

¶3    The factual and procedural background of this case is lengthy and complicated.  The WCC took 19 single-spaced pages to recite the facts relevant to its decision.  This Court will attempt to more briefly summarize while still presenting those facts pivotal to our decision.

¶4    In January 1994, the Human Dynamics Corporation (Dynamics)[1], an employee leasing company operating in Mesa, Arizona, began employee leasing operations in Montana.   Between January and

October 1994, Dynamics contracted with thirteen Montana companies (Client Companies). Under the Agreement for Services executed by the Client Companies with Dynamics, Dynamics agreed to act as "co-employer" for the Client Companies' employees. As co-employer, Dynamics specifically assumed responsibility for various employee-related activities including responsibility for providing "Workers' Compensation Coverage or it's [sic] equivalent." At some time after entering into this Agreement for Services with Dynamics, each Client Company canceled the workers' compensation coverage it had previously held.

¶5    Several months into Dynamics' Montana operations, the UEF[2] contacted Dynamics to determine whether Dynamics was complying with Montana's workers' compensation requirements. Dynamics informed the UEF that it was providing workers' compensation coverage for its employees under a federal Employment Retirement Income Security Act (ERISA) plan which it claimed preempted the State of Montana's requirements. Despite having been told by state agencies in some of the other states in which Dynamics operates that ERISA did not preempt their programs, Dynamics did not contact the DLI or the UEF prior to starting its Montana operations to confirm whether ERISA coverage was acceptable under Montana's program. Very shortly thereafter, the UEF notified Dynamics in a June 1994 letter that the federal ERISA program did not preempt Montana's workers' compensation program and that Dynamics must take the necessary steps to comply with Montana's regulations. In July 1994, Dynamics' attorney acknowledged that Dynamics did not have Montana-approved workers' compensation coverage, but indicated that Dynamics was working on getting UEF-acceptable retroactive coverage. At that time, the UEF accepted policies providing retroactive coverage of previously-uninsured employers.

[1]Human Dynamics Corporation was referred to as "HDC" in other related proceedings. In an effort to minimize confusion with Human Resources Corporation, referred to as "HRC" in previous proceedings, we will generally refer to the parties as "Dynamics" and "Resources."

[2]The UEF is the arm of the DLI responsible for both claims and regulatory functions under Montana's Workers' Compensation Act. One of its regulatory functions is to identify Montana employers who are not providing acceptable workers' compensation coverage and bring these employers to compliance. The Fund is also authorized to penalize these employers for failure to comply with Montana law. Financial penalties from uninsured employers are one source of income for the Fund.

¶6    While Dynamics subsequently professed difficulty in finding retroactive coverage that was not prohibitively expensive, in August 1994, Dynamics' counsel provided the UEF with Policy Number SWC-100-060-00 (SWC-00) issued by Credit General Insurance Company (CGIC). Dynamics claimed that this policy provided it with coverage retroactive to January 1, 1994. The effective date of the policy was March 23, 1993 to April 1, 1994.

¶7    The UEF attorney who reviewed the policy to determine its compliance with Montana's coverage requirements was selected because he had previously worked with employee leasing companies, which present unique concerns for regulators.  This particular UEF representative had learned in a training class that some employee leasing companies attempt to mislead regulators as to the existence of proper workers' compensation coverage and that careful review is therefore prudent.  The UEF's review of the policy revealed several deficiencies, including: 1) the policy was issued to an unrelated Texas company by the name of Allied Resource Management Corporation ("Allied") and listed "HDC, Inc." as an additional insured on an unsigned, undated endorsement page; 2) the policy also was unsigned and undated and had expired in April 1994; 3) the policy was silent as to a deductible; and 4) the policy contained a provision requiring specific notification to CGIC if an insured was operating in Montana, or any other "uncovered" state (the "other states' notification provision").  While the UEF noted all these deficiencies, its representatives testified that the "fatal" deficiency was that the policy did not list "Human Dynamics Corporation" as an insured.

¶8    The UEF attempted to resolve these deficiencies.  It contacted the Montana Secretary of State to confirm that "HDC, Inc." was the same entity as Human Dynamics Corporation but was unsuccessful.  The Secretary of State had a listing for Human Dynamics Corporation but no listing for "HDC, Inc."  Additionally, there were no records with the DLI that suggested Dynamics had ever operated as "HDC, Inc."  Again, being aware of some of the fraudulent tactics some  companies employed to avoid coverage obligations and the potential for coverage denial in the event of a dispute over the identity of the insured, the UEF requested additional proof that "HDC, Inc." and "Human Dynamics Corporation" were the same entity.   It was imperative to the UEF that the named insured exactly match the name of the leasing company doing business in the State.  No such additional proof was presented.  As a result of these deficiencies, the UEF declined to endorse the presented policy at that time.

¶9    In September 1994, Dynamics informed the UEF that it was selling its Montana "book of business" to Dallas-based Human Resources Corporation (Resources)[3] for the purpose of securing Montana-approved workers' compensation coverage retroactive to January 1, 1994. According to the Client Assignment contract between Resources and Dynamics, the effective date of the contract was October 1, 1994.  Under this contract, Dynamics claimed to Resources to have existing workers' compensation insurance or its equivalent and agreed to maintain such coverage through the effective date of the contract "or such other dates as shall be agreed to by the parties."

¶10    Resources' counsel testified that Resources did not take over the actual operation of Dynamics' Montana business on October 1.  He specifically recalled that, in late October, he was still working on the final papers that were to be signed at closing.  He further testified that he believed closing took place in early November.

¶11    In early October 1994, Dynamics' counsel provided the UEF with an ACORD 25-S Certificate of Insurance[4] issued by CGIC's agent, Lockton Companies, designating Human Dynamics Corporation as the Certificate holder.  The ACORD Certificate referenced previously-expired Policy No. SWC-00 and indicated new effective dates of April 1, 1994 through April 1, 1995.  It named HRC ARMCO, Inc. and Allied Resource Management of Florida, Inc. as the insureds.  Therefore, this ACORD Certificate appears to indicate that Policy Number SWC-00 was renewed for another year under its original policy

number.   The ACORD Certificate also contained a disclaimer that the Certificate did not grant to the Certificate holder any rights nor did it "amend, extend, or alter the coverage" of Policy Number SWC-00.  Typed into the "Description of Operations/Locations" section of the document, was "Human Dynamics Corporation covering any and all operations in Montana."

[3]Resources is also an employee leasing company and is the parent company of HRC ARMCO, Alliance Employee Leasing of Florida and Allied Resource Management of Florida, among others.

[4]ACORD, a collective nonprofit organization subscribed to by most U.S. insurance carriers, began issuing binding and non-binding certificates of insurance in the early 1990s. The Acord 25-s Certificate was developed as a non-binding form issued o third parties as evidence of insurance of the named insureds. As a non-binding document, it contained a disclaimer identical to the one in this case. ACORD also issues ACORD 27 Certificates which do not contain this disclaimer and intend to convey all the privileges of the policy to the certificate holder. See *Bituminous Casualty Corp. v. Aetna Life and Casualty (W. VA.),1998 U.S. Dist. LEXIS 23161*

¶12    Also provided by Dynamics' counsel were selected pages of Policy Number SWC-100-060-01 (SWC-01), effective April 1, 1994 to April 1, 1995, issued by CGIC to "Human Resources Corporation."  This policy also was purported to be the renewal policy for the previously-submitted Policy Number SWC-00 which had expired on March 31, 1994.  The  insured had changed from Allied Resource Management to Human Resources Corporation to reflect Resources' purchase of Allied sometime after August 1993.  Policy Number SWC-01 named various Resources and Allied entities including, but not limited to, HRC ARMCO, Inc. and Allied Resource Management of Florida, Inc. as additional insureds.  The policy did not list Human Dynamics Corporation as an insured nor did it list "HDC, Inc." as SWC-00 had.  The policy was unsigned, undated and, according to the UEF, contained no evidence of compliance with the "other states' notification provision."  After reviewing the two documents, the UEF concluded that Dynamics was not insured under Policy Number SWC-01 because it was not named or listed as an insured.  It also concluded that the ACORD Certificate did not extend coverage to or prove coverage of Dynamics; rather it merely confirmed for Dynamics that should any Resources' employees be present on Dynamics' Montana premises they were covered by workers' compensation insurance.

¶13    At some unspecified date in early November 1994, Resources claimed it began taking over the operations of Dynamics in Montana.  Under Dynamics' contract with the Client Companies, Dynamics could not assign its rights or duties vis-à-vis the Client Companies to another party without the prior written consent of the Client Companies.  No evidence was produced to indicate that the Client Companies ever provided prior written consent.  The only evidence introduced in this case to show that the Client Companies consented to the arrangement are the Montana Worker's Compensation and Occupational Disease Policy - Notice of Issuance and Employer Election filing cards ("policy filing cards").  These cards were signed by each Client Company between November 10 and November 15, 1994.  Each card showed Human Resources Corporation as the "Assured."  Resources viewed the

signing of these cards as recognition and acceptance of Resources' purchase of Dynamics' Montana client base.

¶14    While generally working in concert in this case, Resources and Dynamics disagree over the date Resources was obligated to provide workers' compensation coverage.  Dynamics maintains that Resources' obligation to provide workers' compensation coverage began on October 1, 1994, the contractually-proclaimed effective date of the contract between Dynamics and Resources.  Resources, on the other hand, claims that the date each Client Company signed the policy filing card was the date that Client Company became an employee of Resources, and Resources' responsibility to provide workers' compensation coverage became effective.

¶15    The UEF took the position that the date the policy filing card was signed was the date each Client Company was once again satisfactorily covered by workers' compensation insurance.  Moreover, the UEF did not believe that the purchase of Dynamics by Resources provided the Client Companies with retroactive coverage.  As a result of these conclusions, subsequent to the completed take-over of Dynamics by Resources and the concomitant coverage of the Client Companies with acceptable workers' compensation, the UEF notified Dynamics of its belief that each Client Company was an uninsured employer from the date it canceled its coverage after contracting with Dynamics to the date it signed the policy filing card with Resources.  The Fund then provided Dynamics with the opportunity to prove that coverage existed during the claimed intervals.   Several weeks elapsed, after which Dynamics notified the UEF that no additional proof of coverage would be forwarded.

¶16    In March 1995, the UEF informed the Client Companies that they may have been uninsured employers for a period of time and notified them that a UEF representative would be contacting them to schedule an audit of their payroll and records.  The Client Companies responded that Dynamics was the "employer" and, as such, had possession of all requested records.  Upon demand by the UEF to Dynamics to examine its records in Helena, Montana, Dynamics responded that the UEF could review all the records at the company's Mesa, Arizona, location.  The UEF declined to travel to Arizona and began calculating the assessed penalties using the limited but available relevant information it could gather from other sources, such as the State Fund.  It warned Dynamics of the risk that the penalties against the Client Companies could be greater than the penalties that would be derived from accurate company information.

¶17    Between October 1996 and January 1997, the UEF notified  the Client Companies of the calculated penalties that were being assessed against them.  The Client Companies requested a hearing with the DLI hearing officer to contest the penalties.  Dynamics joined the contested hearing and thereafter, the Client Companies and Dynamics presented a joint appeal.  The hearing was held on June 2 and June 8, 1998, and on January 8, 1999, the DLI hearing officer entered a decision in favor of the Client Companies and against the UEF.

¶18    The UEF appealed the decision to the WCC and on June 26, 2000, the WCC reversed  the hearing officer and remanding the matter for entry of an order that the Client Companies were uninsured during the periods of time determined by the UEF and were statutorily subject to the assessed penalties.

¶19    The Client Companies, Dynamics and Resources filed timely notices of appeal to this Court.[5]

¶20    The parties agree that workers' compensation claims filed during the UEF-claimed lapses of compensation coverage were not paid by the UEF, but were paid by either Dynamics or Resources. Dynamics maintains that these claims were paid under Dynamics' ERISA plan and were applied against the deductible on the CGIC workers' compensation policies carried by Dynamics and Resources.

[5]Due to the confusing procedural history in this case, the caption does not clearly represent the alliances of the parties and their issues and should not be relied upon to define the relationships of the parties or the positions which they have taken in this matter.

## STANDARD OF REVIEW

¶21    This is an appeal of the WCC's legal conclusions.  We review WCC's conclusions of law to determine whether the law was correctly applied.  Steer, Inc. v. Department Of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.  The WCC reached its legal conclusions after reviewing the findings of fact and the conclusions of law issued by the DLI hearing officer.  The applicable standard of review, both for the WCC and this Court, is set forth at § 2-4-704, MCA, of the Montana Administrative Procedure:

> (2) The court may not substitute its judgment for that of the agency as to  the weight of the evidence on questions of fact.  The court may affirm the decision of the agency or remand the case for further proceedings.  The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
>
> (a)    The administrative findings, inferences, conclusions or decisions     are:
>
> (v)    clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

¶22    We have established a three-prong test to determine when factual findings are "clearly erroneous." We must first determine whether the findings of fact are supported by substantial evidence.  Next, we decide whether the fact finder misapprehended the effect of the evidence, and lastly, we ascertain whether a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed.  State Comp. Mut. v. Lee Rost Logging (1992), 252 Mont. 97, 827 P.2d 85. Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."   Wunderlich v. Lumbermens Mut. Cas. Co. (1995), 270 Mont. 404, 408, 892 P.2d 563, 566 (citing Miller v. Frasure (1991), 248 Mont. 132, 137, 809 P.2d 1257, 1261).

¶23    Our function as an appellate court reviewing an administrative decision is not to substitute our

judgment for that of the agency but rather to review the whole record to determine if the administrative findings are clearly erroneous and whether the conclusions of law are correct. Baldridge v. Board of Trustees (1994), 264 Mont. 199, 870 P.2d 711. Therefore, in order to determine if the WCC's conclusions of law are legally correct, we must first determine whether the DLI hearing officer's findings of fact were clearly erroneous. Additionally, in cases, as here, where there are mixed questions of law and fact, these are reviewed by the same standard we apply to conclusions of law, i.e., correctness. Farmers Union Cent. v. Dept. of Rev. (1995), 272 Mont. 471, 901 P.2d 561 (citing Maguire v. State (1992), 254 Mont. 178, 182, 835 P.2d 755, 757-58.) (Maguire clarifies that only "pure" findings of fact are reviewed under the "clearly erroneous" test. )

## DISCUSSION

¶24   The alleged lapses in workers' compensation coverage occurred between January 1 and November 15, 1994. Therefore, the 1993 Workers' Compensation Act applies. Buckman v. Montana Deaconess Hosp. (1986), 224 Mont. 318, 730 P.2d 380.

¶25   Each employer must choose to insure its employees under one of three statutorily-authorized plans. Section 39-71-401, MCA (1993). Plan 1 allows an employer to establish its ability to self-insure. DLI must approve an employer's claim of solvency and financial ability to pay workers' compensation claims and benefits. Sections 39-71-2101-2109, MCA (1993). Plan 2 allows employers to insure through a private insurance policy written by any insurance company authorized to transact insurance business in Montana. Sections 39-71-2201-2211, MCA (1993). Plan 3 allows employers to insure their liability for workers' compensation coverage with the State Compensation Insurance Fund. Sections 39-71-2301-2363, MCA (1993). It is the responsibility of the statutory employer, and no one else, to provide workers' compensation insurance. Section 39-71-401, MCA (1993). In the case at bar, there is a dispute as to whether Dynamics or each individual Client Company is the statutory employer. Section 39-71-117(1)(a)-(c), MCA (1993), defining "employer," includes every reasonably imaginable private, public and voluntary entity that we typically consider an employer, whereas § 39-71-117(3)(a) and (b), MCA (1993), creates exceptions to the "employer" definition:

**Section 39-71-117(3):**

An employer defined in subsection (1) who utilizes the services of a worker furnished by another person, association, contractor, firm, or corporation, other than a temporary service contractor, is presumed to be the employer for workers' compensation premium and loss experience purposes for work performed by the worker. The presumption may be rebutted by substantial credible evidence of the following:

(a)   the person, association, contractor, firm, or corporation, other than a temporary service contractor, furnishing the services of a worker to another retains control over all aspects of the work performed by the worker, both at the inception of employment and during all phases of the work; and[6]

(b)     the person, association, contractor, firm, or corporation, other than a temporary service contractor, furnishing the services of a worker to another has obtained workers' compensation insurance for the worker in Montana both at the inception of employment and during all phases of the work performed.

[6]The issue of "control over all aspects of the work performed by the worker" was not argued below and, therefore, is not an issue before this Court. While we believe Dynamics would have a difficult time proving such control since the employees Dynamics leased to the Client Companies were employees of the Client Companies before the Companies contracted the Dynamics, we do not reach this issue because, the UEF established a policy in 1992 not to pursue "the control issue" when involved in proceedings with employee leasing companies.

## ISSUE 1

### Was the correct burden of proof applied to the parties in this case?

¶26     The first issue we address is which party had the burden of proof before the hearing officer. Dynamics contends that the UEF had the exclusive burden to prove that Dynamics was not insured and that the hearing officer correctly found that the UEF had failed to do so.  Dynamics further maintains that the WCC erred in imposing any burden of proving its case on Dynamics.  We have held that the UEF shoulders the burden of proving whether an entity is a statutory "employer" and, if it is, whether the employer is uninsured for workers' compensation coverage.  Auto Parts v. Employment Relations Div., 2001 MT 72, 305 Mont. 40, 23 P.3d 193.

¶27     The initial burden on the UEF, therefore, was to establish whether Dynamics was the "employer" as defined by the statute.  The definition of "employer" presumes that the individual Client Companies are the statutory employers but allows that presumption to be rebutted.   Section 39-71-117(3)(a) and (b), MCA (1993).   To rebut the presumption and find an employee leasing company, such as Dynamics, to be the "employer," there must be a showing that the employee leasing company met certain conditions, one of which is that the leasing company provided workers' compensation coverage to its clients from the inception of its Montana operation.  Section 39-71-117(3)(a) and (b), MCA (1993). Dynamics professed to be the employer; therefore, it had the burden to satisfactorily rebut the statutory presumption.

¶28     It is undisputed that when Dynamics began operating in Montana, it did not have state-approved workers' compensation coverage.  Therefore, to effectively rebut the § 39-71-117(3), MCA (1993), presumption, it had to establish through substantial credible evidence that it obtained acceptable retroactive coverage effective January 1, 1994.  It attempted to do so by producing insurance policies

purporting to provide such coverage. Upon reviewing the produced documents, however, the UEF reasonably concluded that, due to numerous policy deficiencies, retroactive coverage was not established. As a result, the UEF concluded that workers' compensation insurance was not provided from the inception of Dynamics' Montana operations. To confirm that no other coverage existed, the UEF reviewed the National Council of Compensation Insurance (NCCI) and State DLI databases and was unable to establish that Dynamics was insured for workers' compensation under Plans 1, 2 or 3 of the Montana Workers' Compensation Act. We have held that the UEF meets its burden by proving that the NCCI and State Fund databases contain no record of insurance for the employer. Auto Parts of Bozeman, ¶ 23.

¶29    Upon a finding that no coverage was provided, had Dynamics not been an employee leasing company, the UEF would have met its burden of establishing that it was an uninsured employer. However, because Dynamics was an employee leasing company, the UEF's determination that it was uninsured removed Dynamics from the definition of "employer" altogether, and rendered the individual Client Companies the employers.

¶30    We conclude that the WCC did not impose an improper burden of proof in this proceeding. In this case, both in accordance with the presumption and the statutory definition of "employer" in § 39-71-117, MCA (1993), the UEF established that the Client Companies and not Dynamics were the legal "employers," and as such were legally responsible for providing workers' compensation coverage for their employees at all times.

## ISSUE 2

**Were the Montana Department of Labor and Industry's (DLI) hearing officer's findings of fact supported by substantial credible evidence in the record?**

¶31    The next issue presented is whether the DLI hearing officer's findings of fact were supported by substantial evidence in the record. While this is an appeal from a WCC decision, in order to determine if the WCC properly complied with § 2-4-704, MCA, we must review the entire record and determine whether the findings of fact made by the DLI hearing officer were supported by substantial evidence. Only then can we determine whether the WCC erred. Grenz v. Fire and Cas. of Connecticut (1996), 278 Mont. 268, 924 P.2d 264. As indicated above, in January 1999, the DLI hearing officer issued his findings of fact and conclusions of law in favor of the Client Companies. We must now decide by applying the three prong test from Lee Rost Logging (1992), 252 Mont. at 102, 827 P.2d at 88, if those findings of fact were clearly erroneous.

¶32    The primary question before the DLI hearing officer was whether the Client Companies were uninsured for workers' compensation purposes during the time periods for which the UEF seeks to assess penalties. The UEF asserted that Dynamics failed to properly insure several Montana companies for periods of time ranging from six weeks to eleven months, rendering these Client Companies uninsured employers for those periods. Dynamics asserted that the Client Companies were insured without interruption. After conducting a two-day hearing at which the president of Dynamics, the counsel for Resources, and various representatives of the UEF testified, the hearing officer issued 25 specific factual

findings. Many of those factual findings are undisputed and as such will not be analyzed in this decision. Several others, on the other hand, were incorrectly classified as findings of fact when they were, in actuality, mixed statements of fact and law. As such they will be reviewed for legal correctness. Farmers Union Cent., 272 Mont. at 474, 901 P.2d at 563.

¶33    It is undisputed that each of the Client Companies was adequately insured up to the time it contracted with Dynamics. It is further undisputed that each company did not carry workers' compensation coverage in its own name while under contract with Dynamics. It is also undisputed that each company was insured after the time it signed a policy filing card with Resources. Therefore, this case centers upon the UEF's determination that each of these companies was uninsured during its contract term with Dynamics.

¶34    As the parties have done, for analysis purposes, we divide the potentially uninsured time into three periods: January 1 - April 1, 1994; April 1 - September 30, 1994; and October 1 - November 10-15, 1994.

¶35    January 1 - April 1, 1994. Dynamics maintains that after it was informed by the UEF in June 1994, that it was not adequately insured for workers' compensation purposes, it arranged for retroactive workers' compensation coverage through CGIC Policy Number SWC-00. CGIC was the insurer of Resources, the Dallas-based company with whom Dynamics was then negotiating a sale/purchase arrangement. According to the policy, the effective term of coverage was March 23, 1993 to April 1, 1994. Therefore if this policy covered Human Dynamics Corporation and if it provided retroactive coverage, the Client Companies could have been insured from January 1 through March 31, 1994.

¶36    Upon review of the SWC-00 policy for compliance with Montana's workers' compensation program, the Fund had several concerns, the primary concern being that the policy did not name "Human Dynamics Corporation" as an insured. It did, however, name "HDC, Inc." in addition to several other companies that appeared to have no relation to Dynamics. Neither the Secretary of State nor DLI could confirm that Dynamics had operated as "HDC, Inc." in Montana. Relevant documents to which the UEF had access referred to Human Dynamics Corporation or HDC but never "HDC, Inc." The UEF therefore requested additional information from Dynamics in August 1994, confirming that "HDC, Inc." and Human Dynamics Corporation were the same company. Dynamics did not respond to this inquiry for four years then, during the hearing in 1998, the president of Dynamics testified by telephone that "HDC, Inc." on the policy endorsement was his company, "Yes [the technical name of our corporation is Human Dynamics Corporation] but it is, you know, our acronym HDC, Inc., is our trade mark name, our name that we use, you know, we are known as HDC." However, confirming trademark documentation was not provided.

¶37    Dynamics' president further testified that Resources had provided this coverage through its insurer while Dynamics and Resources were negotiating their sale/purchase transaction, and that Resources had paid the premium for the coverage. Again, no document supporting payment by Resources to CGIC for this coverage or confirmation from CGIC that "HDC, Inc." was Human Dynamics Corporation was presented.

¶38    After Dynamics' president testified at the hearing, the general counsel for Resources testified, also by telephone.  He stated that he did not believe that "HDC, Inc."on the insurance endorsement was Human Dynamics Corporation but conceded that he was not certain one way or the other.  He also testified that Resources did not own or was not affiliated with any other company named HDC, Inc. or Human Dynamics Corporation.

¶39    The hearing officer found that "HDC, Inc." was the same company as Dynamics and that Policy Number SWC-00 provided retroactive workers' compensation coverage for Dynamics from January 1994 to April 1, 1994.  It is conceivable that during early negotiations between Dynamics and Resources, Dynamics requested that Resources immediately add it to its insurance coverage.  It is also possible that Resources attempted to do this and that the incorrect listing of "HDC, Inc." on Policy Number SWC-00 was the result of this attempt.  This is pure speculation, however, and the UEF must determine statutory compliance on the basis of more than speculation.

¶40    The applicable statute, § 39-71-117(3), MCA (1993), requires rebutting parties, in this case Dynamics and the Client Companies, to present "substantial credible evidence" of coverage.  Such evidence if it existed, was within Dynamics' control.  However, after eight years, it produced no corrected endorsement from CGIC, or any other confirmatory documentation of coverage.  The only "proof" offered by Dynamics was the unpersuasive, self-serving testimony of Dynamics' president.  While the hearing officer found this testimony convincing, we conclude the WCC was correct in concluding it did not constitute substantial credible evidence that Dynamics was actually insured under the CGIC policy.

¶41    Thus, we conclude the UEF met its burden of proof that Dynamics was not the statutory employer, and that Dynamics failed to establish that it was insured for the period of time from January 1 to April 1, 1994.  Therefore any Client Company who had contracted with Dynamics and canceled its workers' compensation coverage during this period of time was also uninsured.  The hearing officer's determination that Dynamics and the Client Companies were insured between January 1, 1994 and March 31, 1994, was not supported by substantial evidence and therefore was clearly erroneous.

¶42    April 1 - September 30, 1994.   In early October, Dynamics presented to the UEF an ACORD Certificate of Insurance issued to Human Dynamics Corporation as the Certificate Holder, and CGIC Policy Number SWC-01.  Dynamics argued that both the ACORD Certificate and Policy Number SWC-01 insured the Client Companies from April 1, 1994 to April 1, 1995.  The UEF  reviewed both the ACORD Certificate and the policy to determine if singly or together they extended coverage to Dynamics in compliance with Montana's workers' compensation program.

¶43    The ACORD certificate purported to extend Policy Number SWC-00 which had expired on March 31, 1994, through April 1, 1995.  It was, therefore, characterized as a renewal of the original SWC-00 policy.  Neither Human Dynamics nor HDC was listed as a named insured on the ACORD Certificate. The Certificate also contained a disclaimer stating that the Certificate did not grant to the Certificate holder, i.e., Human Dynamics Corp.,  any rights nor did it "amend, extend, or alter the coverage" of Policy Number SWC-00.  (However, typed in the Description of Operations/Locations, was "Human Dynamics Corporation covering any and all operations in Montana.")   The UEF concluded, based on

the plain language of the ACORD Certificate, that the Certificate did not extend coverage to any entity that was not a named insured and that Dynamics was not a named insured.

¶44    Compounding the confusion, Policy Number SWC-01 also purported to be the renewal policy for SWC-00.   Thus, two policies purporting to represent renewal of SWC-00 were presented--one with Policy Number SWC-00 and one with Policy Number SWC-01.  Dynamics argued that Policy Number SWC-01 also provided coverage for the Client Companies beginning April 1, 1994.  The effective term of coverage under Policy Number SWC-01 was April 1, 1994 to April 1, 1995.  The policy identifies as insureds only HRC, HRC Services, HRC ARMCO, Inc., Alliance Employee Leasing of Florida, Inc., and Allied Resource Management of Florida, Inc., none of which are even Client Companies.  Neither Human Dynamics Corporation nor HDC was listed as an insured on this policy.  Moreover, the company named "HDC, Inc." which had been listed on Policy No. SWC-00, was no longer listed as an insured. The UEF determined that it could not endorse Policy Number SWC-01 on its face because Human Dynamics Corporation was not listed as an insured.  Again, we agree.

¶45    Dynamics failed to present substantial credible evidence establishing that it was an insured under policy SWC-00 for the time period of April 1 through September 30, 1994. Because the evidence did not support a finding that Dynamics was an insured under original Policy Number SWC-00 expiring March 31, 1994, Dynamics cannot be an insured on any renewal of that policy unless it had been specifically added to the policy as a named insured during the interim.  There is no evidence that Dynamics was added to Policy Number SWC-00.  We therefore conclude that the hearing officer's finding that Dynamics was covered by workers' compensation coverage under this ACORD Certificate between April 1, 1994 and September 30, 1994, is clearly erroneous and is not supported by substantial evidence.  We therefore affirm the WCC on this issue.

¶46    We now must determine whether Resources (as opposed to Dynamics) provided workers' compensation coverage for the Client Companies during this time period.  Resources contends that on the date each individual Client Company signed the policy filing card and became an employee of Resources, that Client Company was retroactively covered under Policy Number SWC-01. Unfortunately, again no substantial credible evidence of such retroactive coverage was provided.  The UEF had expressed throughout 1994 and 1995 its willingness to accept a policy reflecting retroactive coverage, but no proof that such a policy existed was ever provided.  Resources could have provided a letter from CGIC plainly confirming that the Client Companies were insured from April 1, 1994 to April 1, 1995, upon the November 1994 signing of the policy cards.  It did not.  Thus, we must conclude there was no substantial credible evidence establishing such coverage.

¶47    October 1 - November 10-15, 1994.  Dynamics maintains that as of the October  1, 1994 effective date of its contract with Resources, it became Resources' responsibility to provide workers' compensation coverage for the Client Companies.  Resources disagrees.  It contends that under a contract provision, the parties agreed that Resources would begin providing coverage at a later date.

¶48    Our understanding of the hearing officer's findings is that Resources was responsible for providing coverage as of October 1, and that when the Client Companies became Resources' employees in mid-November, they were retroactively covered by Policy Number SWC-01 beginning on October 1.

¶49     The conflict over the effective date of the contract between Dynamics and Resources and which of these two leasing companies had the obligation to provide workers' compensation insurance to the Client Companies after October 1, 1994, is not ours to resolve.  The issue to resolve is whether the Client Companies had workers' compensation insurance after October 1, 1994, not who was responsible for providing it.  We have already concluded that the hearing officer's findings that Dynamics provided insurance for the Client Companies from January 1 to September 30, 1994, was clearly erroneous and was not supported by the evidence.  There was likewise no credible evidence that Dynamics insured the Client Companies beyond September 30.  Accordingly, if the Client Companies were insured at all, it would have been through Resources.

¶50     Resources argued that when the Client Companies became Resources' employees by signing the policy filing cards, the Client Companies were then retroactively insured to April 1, 1994, under Policy Number SWC-01.   However, as discussed above, there was no evidence supporting a finding that such coverage was retroactive to either April 1 or October 1.   Correspondence between Resources' workers' compensation insurance carrier and the UEF presented at the hearing, established that the employees of the Client Companies were not covered by Resources' policy until the Client Companies signed the necessary forms to become clients of Resources.  Each Client Company signed the necessary form between November 10 and November 15, 1994.  If there was an understanding between Resources and CGIC that upon becoming employees of Resources by signing the policy filing cards, the Client Companies would enjoy retroactive coverage from April 1, 1994, evidence of it was not presented.

¶51     Additionally, substantial evidence existed to establish a November 10-15 commencement for insurance coverage.  Despite Dynamics maintaining that Resources was responsible for providing coverage after October 1, Dynamics paid Unemployment Insurance ("UI") taxes on over $300,000 in wages for the Client Companies during the fourth quarter of 1994, which began on October 1.  These taxes amounted to approximately 30% of the wages reported during the fourth quarter.  This high percentage of wages for which Dynamics paid UI taxes supports a conclusion that Dynamics knowingly retained responsibility for the Client Companies for at least several weeks into the fourth quarter.

¶52     Moreover, an employee of one of the Client Companies was injured on November 8, 1994.  The case with this employee was ultimately settled by Resources assuming responsibility as an "uninsured employer."  The settlement form acknowledged that the insurer was the UEF and not CGIC, confirming that Resources had not yet begun insuring this Client Company and particular employee through its CGIC-provided workers' compensation coverage as of November 8, 1994.

¶53     The hearing officer found that coverage existed under Policy Number SWC-01 from October 1, 1994, forward.  We conclude there was no credible evidence to support such a finding and as such it is clearly erroneous.  We thus affirm the WCC in this regard, and conclude that the Client Companies were uninsured employers from October 1, 1994, until each company signed the policy filing card with Resources in mid-November.

¶54     In an attempt to prove to the UEF that it had insured the Client Companies, Dynamics provided copies of insurance policies, certificates of insurance and corporate officer testimony all of which are

part of the evidentiary record in this case. Also part of the evidentiary record are the numerous documents generated by the UEF explaining why the insurance policies and certificates of insurance failed to satisfy the UEF's standards for compliance with the law. The UEF's explanations are credible and its requests for satisfactory coverage documentation were prudent. The UEF's requirements in this case do not appear unreasonable--a current, dated and signed insurance policy written by a carrier licensed to do business in Montana, issued to or naming Human Dynamics Corporation as an insured, with proof that any notification provisions had been satisfied. Despite numerous requests for documentation meeting the above requirements, Dynamics never, throughout these eight years, provided it to the UEF. We therefore affirm the WCC's conclusion that the DLI hearing officer's findings of fact in this regard were not supported by substantial evidence.

## ISSUE 3

### Were the WCC's conclusions of law legally correct?

¶55 Having determined that the DLI's hearing officer's findings of fact were clearly erroneous, we next determine whether the WCC's conclusions of law were legally correct. The WCC reviewed all the evidence in the case and concluded that it supported a determination that Dynamics had not provided the Client Companies with acceptable insurance during the specified times. Therefore, the WCC held that the hearing officer's findings of fact were clearly erroneous. Based upon this determination, the WCC reversed the hearing officer and remanded the case for entry of an order that the Client Companies were uninsured employers for the specific periods of time determined by the UEF and were subject to the assessed penalties. We conclude that, because such a result was compelled by a finding that the hearing officer's findings of fact were clearly erroneous, the WCC's legal conclusion was correct.

## ISSUE 4

### Did the WCC erroneously decide this case on a previously unraised issue?

¶56 Dynamics further maintains that the WCC erroneously decided this case on a previously unraised issue. It argues that the WCC "reversed, [the DLI hearing officer] primarily because it found that retroactive coverage was not acceptable under this Court's decision in Buerkley v. Aspen Meadows Ltd. Partnership, [1999 MT 97, 294 Mont. 263, 980 P.2d 1046]." Dynamics contends that the UEF did not argue the acceptability of providing a retroactive insurance policy and therefore the WCC should not have based its reversal on this issue.

¶57 We disagree with the premise that the WCC reversed based on a retroactive application of Buerkley. While the WCC referenced the Buerkley case after concluding that the Client Companies did not qualify for an exemption from providing their employees with workers' compensation coverage under § 39-71-117(3), MCA (1993), it did not rely upon that case to reach its conclusion. The WCC based its ruling on the failure of Dynamics to comply with § 39-71-117(3)(b), MCA (1993), and this Court's opinion in Dahl v. Uninsured Employers' Fund, 1999 MT 168, 295 Mont. 173, 983 P.2d 363.

¶58 Dynamics further argues that the WCC failed to consider Montana law regarding interpretation of

insurance contracts.  It maintains that any ambiguity in an insurance contract should be construed strictly in favor of the insured and against the insurer.  We do not disagree that this is a correct statement of insurance law in this state.   However, this contract principle does not apply here.  The insurance contracts in this case were not ambiguous.  The applicable contract principle in this case is that to be covered by an insurance policy, you must be a named insured.  Human Dynamics Corporation was not an insured under these contracts.  Thus, there was no incorrect application of the law on insurance by the WCC.

## ISSUE 5

### Did the WCC err in affirming the penalty assessments issued by the UEF?

¶59   Lastly, we affirm the WCC decision regarding the penalty assessments issued by the UEF.  We agree with the WCC that Dynamics failed to produce the necessary records to justify a different penalty calculation.  The WCC gave the Client Companies and Dynamics a post-decision opportunity to provide records or calculations to support a lower penalty.  Unfortunately, Dynamics failed, yet again, to submit a documentary basis for recalculation of the penalties.

¶60   The results here are unfortunate.  Thirteen companies relied on the knowledge and integrity of an employee leasing company that failed to determine what Montana's workers' compensation laws required before commencing operations here. This omission is compounded by the fact that this company had encountered this same problem in other states.  Subsequently, while it professed to having obtained UEF-acceptable insurance, it failed to provide the evidence that would have satisfied the UEF, and failed to support its contention that the penalty calculation was erroneous.

¶61   For the reasons stated in this Opinion, we affirm the WCC's Decision and Order on Appeal in this matter.


/S/PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE